LOTTINGER, Judge.
This appeal arises out of an automobile accident which occurred on November 14, 1963, in the town of Franklinton, Louisiana, when the plaintiff parked his automobile on Washington Street in that city, at a space provided with a parking meter. After the vehicle had been parked, and while it was unattended, a truck and log trailer loaded with logs, while attempting to make a left turn on Washington onto Main Street in the town of Franklinton, turned in such a manner so that the logs overhanging the rear of the truck struck the plaintiff’s automobile. Plaintiff thereafter instituted suit against Ray Burge, the owner of the truck, Fidelity and Casualty Company of New York, the liability insurer of the truck, Richardson Forest Products, Inc., the concern to whom the logs were being hauled, and Carruth Miller, a police officer of the town of Franklinton, who was helping direct the truck in its attempt to negotiate the turn.
In his petition, the plaintiff prayed for, inter alia, the cost of repairs to his automobile in the amount of $302.37, and depreciation and loss of value caused to his automobile over and above the normal by the accident in the amount of $1500.00.
Prior to the trial all of the defendants except Ray Burge and Fidelity and Casualty Company of New York were dismissed from the suit by the Court. At the trial of the case, the defendants admitted liability, thus leaving for determination by the Trial Court only the question of quantum. The Trial Court found that the cost of repairs to the automobile amounted to the sum of $302.37, and awarded that sum to the plaintiff. In addition, the Trial Judge found that the evidence justified allowing the plaintiff the sum of $500.00 for depreciation of his automobile. It is from this judgment that appellants have appealed to this Court.
Appellants assign only one specification of error, and that is that the Lower Court erred in allowing an award for depreciation in the absence of proof that the plaintiff had actually sustained a loss due to the decline in value of his vehicle following the accident and its repair, or that he had sustained any loss beyond its actual cost of repair to his vehicle. Thus, the sole question presented to us for determination in this matter is the correctness of the Trial Judge’s award of $500.00 to the plaintiff for depreciation of the automobile by reason of its having been wrecked.
The record discloses that the plaintiff had purchased the automobile on November 7, 1963, seven days prior to the accident, and that he had purchased it from Tullos Motor Co., Inc., in Bogalusa, Louisiana. At the time of the accident, the plaintiff’s vehicle had been driven 200 miles. The damage done to Mr. Foil’s automobile was confined primarily to the top of the automobile and the rear glass. The repairs to the automobile were done by the Ford dealer in Bogalusa. These repairs consisted of cutting the damaged top off of the automobile and installing a new top and rear glass by means of welding the new top onto the body of the automobile. The plaintiff testified that ever since the automobile had been repaired it had leaked water in the *569 -vicinity of the rear glass. He also testified -that a casual examination of his automobile would disclose that it had been wrecked be•cause of rust spots which appeared in sev■eral places along the seam line where the new top was welded to the automobile.
Mr. Denver C. Tullos, who is the Secretary-Treasurer of Tullos Motor Co., Inc., the Rambler dealer from whom Mr. Foil had purchased his automobile, testified on behalf of plaintiff. He stated that he had been in the automobile business for 20 years and testified with reference to the purchase price of the automobile purchased by Mr. Foil. He stated that he had examined Mr. Foil’s automobile both after the accident and after the repairs were made by the Ford •dealer. He found that the rear glass fitted very poorly and also found that there was some welding which was rough. With ref■erence to his estimate of the loss of value •of plaintiff’s vehicle after the accident, Mr. 'Tullos testified as follows:
“Q. Based upon your examination and your experience in the automobile business, Mr. Tullos, could you give us an estimate of the value of loss of this vehicle after the accident after your second inspection after the accident?
A. It would be worth at least a thousand dollars less than it was prior to the accident. May I qualify?
Q. Yes Sir, explain anything you want to.
A. To begin with, there is a stigma attached to a car that has been in a wreck and anyone purchasing the car and knowing that it has been wrecked will not pay the price of a car that had not been wrecked with a little over 200 miles on it. Had I been trying to sell a car that new of mine it would bring very near a new price within four or five hundred dollars but if someone knew that the same car had been wrecked a stigma of the wreck would make it worth at least a thousand dollars less.”
He also testified that it was impossible for a repair shop to replace the top of an automobile and do as good a job as was done at the factory. He testified that this is because wherever the new top is spot welded to the old body, the primer or paint which is at that spot is burned and destroyed and thus leaves a place to set up rust. At the factory, according to Mr. Tullos, after the top has been spot welded onto the body, the entire body is dipped into a vat of rustproofing material which then goes between the spot welded panels to prevent rust 'where it was burned by the welding torch. He testified that this dipping procedure was impossible at any place other than the factory. Under cross examination, when questioned about whether or not it was possible to tell the difference between an original roof and a new roof on an automobile, if the work were done properly, Mr. Tullos testified as follows:
“Q. You would not notice the difference in old roof, the original roof and a new roof if it was done properly?
A. I don’t think there is anyone that could put the roof on to where I couldn’t tell it, if that is what you mean.
Q. For the average person on the street, or the laymen, not a dealer now, but a layman—
A. If the average person on the street were looking for that damage, he would certainly find it.
Q. But you would have to know if it was there in the first place to properly detect it, is that correct?
A. Not necessarily, he would be examining the car and try to find out whether or not it was wrecked or not then he would be able to find it.
*570 Q. How would you say that could be determined ? How would you determine it?
A. The first thing that I would see would be before I got very close to it would be the paint. I don’t know of anyone that can paint a car and make it look like a factory paint, that would be the first instance and you would find the spot welds we a-re talking about would not be there and the little indentations you find around those areas were not there and hadn’t been filled and find that car would look different in those areas were that work was done.” v'
On cross examination, Mr. Tullos re-affirmed his previous testimony under direct examination to the effect that the automobile would have been normally depreciated by some $500.00 if it had not been involved in the accident, and that by reason of it having been involved in the accident, that it had depreciated $1,000.00. He also testified that any wreck would lower the book value of an automobile. When questioned by the Court with reference to this depreciation attributable to the accident, Mr. Tullos testified as follows:
“Q. Mr. Tullos, would there be any difference between the value of this vehicle today and the value of a similar vehicle which had not been involved in any type of accident?
A. Yes.
Q. Would it be as marked a difference as which you testified to right after the repairs were made?
A. If I understand you right, during this lapse of time, would it be the same difference as it was then ?
Q. All I am interested in knowing is if with the passage of time, the difference in value which you testified caused by certain facts would not grow smaller and get away fromt being a new car?
A. Yes, it would grow smaller.”
Mr. B. E. Bickham, Jr., a resident of Franklinton, testified that he knew the plaintiff, Mr. Foil, and that he was familiar with his automobile and that he saw him practically every day. He testified that he remembered the day Mr. Foil bought the automobile, as Mr. Foil had brought it by and showed it to him. He indicated that Mr. Foil parked the vehicle very near his-grocery store every morning. He also testified that he had seen the car after the accident and after it was repaired, having seen it the last time just a few minutes before the trial started. He testified that after the vehicle was repaired it appeared to him as-though it had a different color paint on the top and the bottom, and that he could tell it had been repaired. Fie testified that he saw no rust spots in the vicinity of the top immediately after the repair work was done,, but did notice some a few days later. He testified that the rust spots appeared to begetting worse as time passed.
There is ample authority in the jurisprudence for awarding damages for depreciation on automobiles in addition to-costs of repairs. See Blevins v. Drake-Lindsay Co., Inc., La.App., 144 So. 257, Dupuy v. Graeme Spring and Brake Service, La.App., 19 So.2d 657, Hamilton v. Dalrymple, La.App., 135 So.2d 536, Cunningham et al. v. Williamson et al., La.App., 174 So.2d 288, Baillio v. Western Casualty Surety Company, La.App., 189 So.2d 605, and the cases therein cited. In Baillio v. Western Casualty Surety Company, supra, the Third Circuit in considering the question of damage to an automobile with 2,000) miles on it said:
“Although depreciation is not often allowed, in a proper case it is a proper item of damage, as evidenced by past decisions. Hamilton v. Dalrymple, La.App. 2 Cir., 135 So.2d 536; Day v. Roberts, La.App. 2 Cir., 55 So.2d 316; Green v. Heard Motor Co., Inc. et al., La.App. 2 Cir., 63 So.2d *571 178; Baker et ux. v. Shreveport Railways Company, Inc., La.App. 2 Cir., 68 So.2d 228.”
In this instance, the testimony with reference to the depreciation of the vehicle was uncontroverted. The plaintiff himself testified as to the difference in appearance -of his automobile before and after the accident, an expert testified as to the difference in value of the automobile after having been wrecked as opposed to what it would have been had it not been wrecked, and a lay person testified as to the appearance of the automobile before and after the accident. The defendant offered no testimony of any character at the time of the trial. In the light of the testimony of the witnesses as contained in the record and the jurisprudence, we find no manifest error ■on the part of the Trial Judge in awarding the plaintiff damages for depreciation of Lis automobile.
Accordingly, the judgment of the Trial Court is affirmed, appellants to pay all costs ■of this appeal.
Judgment affirmed.