250 So.2d 168 (1971)
Leon GARY, Plaintiff-Appellee,
v.
ALLSTATE INSURANCE CO., Defendant-Appellant.
No. 8376.
Court of Appeal of Louisiana, First Circuit.
May 31, 1971.
Horace C. Lane, of Baton Rouge, for defendant-appellant.
Leon Gary, Jr., of Ellison & Gary, Baton Rouge, La., for plaintiff-appellee.
Edward W. Fetzer, in pro. per.
Before LOTTINGER, SARTAIN and TUCKER, JJ.
SARTAIN, Judge.
This action arises out of an automobile collision on June 6, 1967, in which plaintiff's 1966 Pontiac G.T.O. was damaged. Liability was admitted by the defendant insurer and the cost of repairs was stipulated at $953.27. Plaintiff had purchased the automobile new on April 21, 1966 at a cost of $3,257.89. It was estimated from an N. A.D.A. price book dated October of 1967 that on the date of the accident, the book value of such a car, including air conditioning and automatic transmission, would have been at least $2,600.00. The plaintiff elected to buy a new car but refused the dealer's offer of $900.00 trade-in allowance for the car in its wrecked condition. Rather, the car was repaired for the cost mentioned above and placed on the dealer's used car lot to be sold for the plaintiff. Approximately two years later, during the summer of 1969, the car was sold for $1,500.00.
*169 Plaintiff contended that the sale resulted from the only firm offer which had been made during the two year period for the repaired car, despite efforts by plaintiff and the dealer to find a buyer. He and the dealer attributed this difficulty to the hesitancy of the public in buying a car that has been wrecked and plaintiff claimed that the measure of depreciation resulting from the accident should be the difference between the value of the car before the wreck ($2,600.00) and the price it eventually brought at the sale ($1,500.00) or $1,100.00.
The defendant admitted that depreciation of a car resulting from a wreck is an element of compensible damages but strenuously objected to determining the amount of depreciation by the formula presented by the plaintiff. Instead, the defendant urged that the value of the car immediately after the repairs were completed, rather than the eventual sale price, should be used in fixing the amount of depreciation attributable to the wreck, and since plaintiff had failed to prove that value he was not entitled to recover that item of damages, or, alternatively, that the recovery should be limited to $100.00 or $200.00 in accordance with the rewards granted in similar cases by our courts.
The trial judge in finding for the plaintiff gave the following reasons for his decision:
"The Court is faced with making a decision which apparently is res nova, i. e., determining whether the actual loss as reflected by the transaction should be awarded or whether the loss based on the values at the time of the accident and repair should be adopted by the Court. Being well aware that this is a new question, the Court is going to award the actual loss sustained by the plaintiff in this case, that is, the sum of $1,100.00 for depreciation. To do otherwise would, in our opinion, force the owner of an automobile to continue the use of that car even though it had been wrecked and to deny him the right to sell his automobile which is a right that any normal owner has under our system of laws. An important fact in this case is that the owner did attempt to minimize his loss by exerting every possible effort to sell the automobile as soon as it had been repaired. We think the evidence clearly demonstrates that the reason the automobile did not sell was because it had been wrecked. This places the burden of such loss upon the tort feasor or, as in this case, his insurer."
Under the particular facts of this case we are of the opinion that the trial judge erred in the manner in which depreciation was computed, i. e., the difference in the value of the vehicle just prior to the accident and the price it sold for two years later.
Our courts have on numerous occasions recognized that in addition to the actual cost of repairs the owner of an automobile may claim and receive additional damages in the form of depreciation which is compensation for the diminution in value of the vehicle by virtue of the fact that the vehicle was involved in an accident. Hamilton v. Dalrymple, 135 So.2d 536 (2d La. App., 1961); Baillio v. Western Casualty and Surety Company, 189 So.2d 605 (3d La.App., 1966); Kinchen v. Hansbrough, 231 So.2d 700 (1st La.App., 1970); and Bergeron v. C. Hugh Tarver, Jr. & Associates, Inc., 233 So.2d 704 (3d La.App., 1970).
In each of the cited cases there was expert testimony relative to the value of the damaged vehicle immediately prior to and shortly following the accident. The vehicles involved were not retained for a number of years and sold on the open market as in the case at bar. Accordingly, the determination of an amount for depreciation was not influenced by the natural and normal depreciation of a vehicle occasioned solely by the passage of time. In Hamilton the court awarded the sum of $500.00 as depreciation for a 1957 model vehicle *170 that was damaged in February of 1960. In Baillio the sum of $200.00 was considered "not too speculative" to cover depreciation for a vehicle that was only seven months old with 2,000 miles. In Bergeron a four day old vehicle costing $4,500.00 was damaged to the extent of $895.93. Experts for both parties to the litigation estimated depreciation at $200.00 to $300.00. The court affirmed the higher award of $300.00. In Foil v. Burge, 196 So.2d 567, 570 (1st La. App., 1967) a seven day old Rambler vehicle with 200 miles was damaged to the extent that a new top had to be placed on the automobile. There was evidence supporting the conclusion that the repairs were not well made. We affirmed an award of $500.00 for damages.
In the case at bar plaintiff determined the morning following the accident that he did not desire to have his wife and family driving a vehicle which had been damaged to the extent of the automobile in question. He declined a salvage trade-in in the amount of $900.00. Without his approval the agency repaired the wrecked vehicle. Plaintiff asked the agency to place the repaired vehicle on its used car lot and endeavor to sell it for him. He further requested the agency to advise any prospective purchaser that the car had been wrecked because plaintiff did not want the responsibility or potential liability of selling a defective vehicle. However, the evidence is abundantly clear that the vehicle was repaired in an excellent manner. It had sustained no damage to the frame. Principal damages were to the radiator, grill and fenders which were replaced within new parts.
The owner of the agency testified that his company made a conscientious effort to sell the vehicle but were unable to do so for approximately two years because each prospective customer declined to buy a vehicle that had been involved in an accident. Originally, plaintiff had asked the sum of $2,000.00 for the car but ultimately accepted the sum of $1,500.00. The trial judge awarded depreciation in the amount of $1,100.00 plus the repair figure of $953.27.
We are of the opinion that it was plaintiff's duty and obligation to obtain estimates and appraisals as to the value of his vehicle immediately following the accident so as to establish his claim for damages because the burden of proof tests with him. In the instant case the same vehicle in 1969 was estimated to be worth $1,800.00. It sold for $1,500.00 or a difference of $300.00.
We recognize that some depreciation may occur to a wrecked vehicle irrespective of the excellent manner in which it has been repaired. Based on the above cited authorities we conclude that the sum of $300.00 adequately compensates plaintiff as to his claim for depreciation.
Accordingly, for the above and foregoing reasons the judgment of the district court is amended by reducing the amount thereof from $2,053.27 to the sum of $1,253.27. The cost of this appeal is to be borne by the defendant.
Amended and affirmed.