For the foregoing reasons, the judgment of the trial court is hereby affirmed.

FROEB, P.J., and GRANT, J., concur.

675 P.2d 1381

**FARMERS INSURANCE COMPANY OF ARIZONA, Plaintiff/Appellee,**

v.

**R.B.L. INVESTMENT COMPANY, dba Bob Lewis Porsche-Audi, Defendant/Appellant.**

**No. 2 CA-CIV 4827.**

Court of Appeals of Arizona, Division 2.

Dec. 15, 1983.

Chandler, Tullar, Udall & Redhair by D.B. Udall and William J. Augustine, Tucson, for plaintiff/appellee.

Daniel A. Nicolini, Tucson, for defendant/appellant.

## OPINION

HATHAWAY, Judge.

Whether the owner of a negligently damaged motor vehicle may be compensated for damages for loss in the fair market value above and beyond the cost of repair, and whether he may be compensated for loss of use of the motor vehicle during the period in which it is being repaired, are questions raised on this appeal. The facts are uncontested and the issues presented for review are solely questions of law which we may decide independently of the trial court's conclusions. See *Associated Students v. Arizona Board of Regents*, 120 Ariz. 100, 584 P.2d 564 (App.1978), cert. den. 440 U.S. 913, 99 S.Ct. 1226, 59 L.Ed.2d 462 (1979). We disagree with the trial court's conclusions limiting damages to the cost of repair and disallowing the cost of "flooring" during the period of repair.

On October 30, 1980, a new, unsold, 1980 Audi, available for sale from appellant's new car dealership, while being taken for a test drive, was involved in a collision with a vehicle insured by Farmers. Farmers admitted that the accident was the fault of its insured.

Repairs to the new Audi at the retail cost of $3,495.70, were required. Farmers offered to pay the repair costs, but appellant refused the offer on the basis that it would not fully compensate the loss. Farmers thereafter erroneously issued its draft to appellant for the sum of $9,460, which appellant accepted and cashed. Farmers asked for a refund of all funds in excess of its original $3,495.70 offer, and appellant counteroffered to return the amount in excess of the loss it claimed. Farmers refused and this suit ensued for return of the funds. This accounts for the unusual posture wherein Farmers, in seeking recovery of the overpayment, is litigating the damage and losses of the "defendant"/appellant.

The issue of the proper measure of appellant's damages was tried to the trial court on stipulated facts. The trial court's findings of facts include:

"... 9. That the dealer's wholesale factory cost of the car is $15,526.00.

10. That the amount of $3,122.63 was spent to fix the car after it was damaged in the accident.

11. That the dealership spent $1,971.91 in interest to the Valley National Bank paid on this particular car during the time it was in the shop being repaired.

12. That also, added to these numbers are normal, average gross profit in the sum of $889.00, and from that total they are deducting the amount of money for which the car was sold, $13,500.00, leaving a difference of $8,009.54 due from plaintiff."

The trial court held that the compensable damages were limited to the cost of repair. It is from this ruling that the appeal is taken. The judgment appealed from was based upon the trial court's minute entry of November 24, 1982, wherein the trial court stated:

"... 2. Present Arizona law provides for no award for decrease in value where the property can be repaired.

3. Present Arizona law makes no provision for collection of interest or floor-planning or delay in sale."

Appellant begins its loss-to-fair-market-value argument with a submission that an automobile that has been in a major accident is worth less than an identical automobile that has not been in an accident, suggesting that one need only examine their own biases as a consumer to acknowledge a disparity in the price they would be willing to pay for either vehicle. They further argue that where the choice is between an automobile that is "new" versus one that was new but was in an accident and is now repaired, the disparity is magnified.

The issue of the proper measure of damages for injury to personalty was discussed

in *Anderson v. Alabam Freight Lines*, 64 Ariz. 313, 169 P.2d 865 (1946), where the Arizona Supreme Court stated:

" 'The measure of damages for injuries to personal property less than its destruction is the difference in the value of the property immediately before and immediately after the injuries.' [quoting from *Mesa City v. Lesueur*, 21 Ariz. 532, 540, 190 P. 573, 576.]

In addition to the costs of repairs and value of loss of use, the evidence in this case shows that the value of appellee's truck immediately before the accident was approximately $10,000, and immediately following the accident, in its damaged condition, was approximately $6,500, or a difference of $3,500. The judgment of the trial court was for the latter amount. There was, therefore, ample evidence to justify the judgment independently of the costs of repairs, loss of time, and similar items. The court also found that the cost of repairs would exceed $2,500, *and that when made, the truck would have a value of $1,000 less than it had immediately preceding the accident.*" (Emphasis added) 64 Ariz. at 319, 169 P.2d at 869.

We find that *Anderson v. Alabam Freight Lines, supra*, deals with a factual situation where damages in the form of a loss of market value existed over and above the cost of repairs and is therefore controlling in the instant case. We find inapposite *Reckart v. Avra Valley Air, Inc.*, 19 Ariz.App. 538, 509 P.2d 231 (1973); *Downs v. Shouse*, 18 Ariz.App. 225, 501 P.2d 401 (1972); *Melvin v. Stephens*, 10 Ariz.App. 357, 458 P.2d 977 (1969), all cited by appellee in support of its position. Those cases do not involve facts such as presented in the instant situation where the damaged party had actual, provable losses for market value and loss of use over and above the cost of repairs. We believe that the rule is clearly enunciated in the Restatement (Second) of Torts, § 928 (1977):

"§ 928. Harm to Chattels. When one is entitled to a judgment for harm to chattels not amounting to a total destruction

in value, the damages include compensation for

(a) the difference between the value of the chattel before the harm and the value after the harm or, at his election in an appropriate case, the reasonable cost of repair or restoration, *with due allowance for any difference between the original value and the value after repairs*, and

(b) the loss of use." (Emphasis added)

Other authority supporting damages for depreciation beyond the cost of repair includes Professor Dobbs, who writes:

"There seems no warrant at all for insisting that the owner content himself with the repair costs if they are less than the depreciation, provided depreciation can be and is adequately proven. However satisfactory the repairs may be in, say, the operation of a car, the owner may quite possibly find that the trade-in value of his car is less when he seeks to purchase a new automobile, or that its cash sale value is less throughout the immediate life of the car. If this sort of depreciation is real, and can be established, there seems no reason at all to deny full compensation by limiting recovery to cost of repairs." D. Dobbs, Remedies, § 5.10, at 380 (1973).

Jurisdictions that have addressed the issue seem to have generally held that the measure of compensation to the owner of a negligently damaged motor vehicle may include the cost of repair and proven residual diminution in fair market value. See, e.g., *Perma Ad Ideas of America, Inc. v. Mayville*, 158 Ga.App. 707, 282 S.E.2d 128, 130 (1981); *Trailmobile Division of Pullman, Inc. v. Higgs*, 12 Ill.App.3d 323, 297 N.E.2d 598 (1973); *Gary v. Allstate Insurance Company*, 250 So.2d 168 (La.App.1971). We believe this is the appropriate standard.

Appellant contends that the trial court erred by denying as a matter of law the claim for interest paid during the period of repair on the loan it had taken out to purchase and "floor" the damaged vehicle. It is argued that having the vehicle available for show and sale is the "use" to which

the vehicle would have been put but for the negligence of Farmers' insured. The interest expense paid during the period of time between the accident and the vehicle's repair is stipulated to be $1,971.91, and is the interest paid by appellant to the Valley National Bank for the car while being repaired only. The repairs took many months due to parts shipping. Loss of use is an appropriate item of damages. Restatement (Second) of Torts, § 928(b); see also, *Fred Frederick Motors, Inc. v. Krause*, 12 Md.App. 62, 277 A.2d 464 (1971); *Trailmobile Division of Pullman, Inc. v. Higgs*, supra. Professor Dobbs, in his treatise on remedies, states, at p. 168–9:

> "*Where plaintiff has a claim for rental value or other loss of use.* In cases where the plaintiff's claim is one for the loss of use of his property, the rental value of the property during the period in which the plaintiff was deprived of it is often one element of damages he is allowed to recover. If his automobile is damaged and he loses the use of it for a month, he may be entitled to its rental value or the rental value of some substitute transportation, as well as to some recovery for the physical damage itself. *But it would be possible, if the occasion arose, to mentally convert the car into cash. Instead of talking of renting the car, it would then be possible to talk of 'renting' the cash—that is, to talk of paying interest for the use of money in a sum equal to the value of the car.* The amount of interest on the cash value of the car is not necessarily the same as the amount of rental value of the car itself. Nevertheless, rental value of the car and interest on the cash value of the car can be seen as two measurements of the same underlying value, since it is almost always acceptable to express the value of property in terms of money.... if for any reason he is willing to base his loss of use claim on interest rather than rental values of the tangible form of his

property, there is no reason to deny it, and sometimes this is convenient to both parties." [footnotes omitted] (Emphasis added).

We deem the out-of-pocket interest expense paid by appellant to be includable as a fair measure of compensation for the loss of use of the vehicle during the period of repairs. The time in the shop for repairs was occasioned through negligent conduct and the interest expense incurred when the vehicle was not available for sale by appellant would not have been incurred but for the negligence of the plaintiff's insured. It is a direct and proximate result of the plaintiff's insured's negligence and should be compensable. Cf. *Higgins v. Guerin*, 74 Ariz. 187, 245 P.2d 956 (1952). It is the policy of the law to award those damages which will fairly and adequately compensate the injured party. *Higgins v. Guerin*, supra.

The parties stipulated that the vehicle cost the dealership $15,526 wholesale and the average gross profit on such a car is $889,[1] making its pre-collision value total $16,415. After the repairs were performed, the automobile sold for $13,500, leaving appellant out of pocket $2,915 after repairs. The judgment is modified to include this amount plus $1,971.91 for loss of use.

As modified, the judgment is affirmed.

HOWARD, C.J., and BIRDSALL, J., concur.

---

1. "In addition to the cost of repairs and loss of use of a motor vehicle damaged in an accident, the loss of sale value arising from the mere fact of the injury is an element of damages to be considered, where the vehicle cannot be made entirely good by repairs." 15 Blashfield Automobile Law & Practice, § 480.11, at 42–3 (3rd ed. 1969).