**WIESE–GMC, INC., Appellant–Plaintiff,**

**v.**

**Larry J. WELLS, Appellee–Defendant.**

**No. 34A02–9105–CV–215.**

Court of Appeals of Indiana,
Second District.

Dec. 30, 1993.

Rehearing Denied Jan. 24, 1994.

**596**

William E. Beck II, Kokomo, for appellant-plaintiff.

Rodney V. Shrock, Kokomo, for appellee-defendant.

BUCHANAN, Senior Judge.

## CASE SUMMARY

Wiese–GMC, Inc. (Wiese) appeals an award of damages in the amount of $3,341.00 entered in its favor as a result of Larry J. Wells' (Wells) negligence, claiming that the trial court's calculation of damages is contrary to law.

We reverse and remand for further proceedings consistent with this opinion.

## FACTS

The facts most favorable to the judgment reveal that Wiese was an automobile dealership in Kokomo, Indiana. On August 22, 1989, Wells was driving his automobile and collided with a van owned by Wiese which was parked on Wiese's lot.

Wiese purchased the van in October, 1988 for $15,163.25 from the General Motors Corporation, and it was shipped to Carriage Conversions in Millersburg, Indiana, where a "Cameo Royale conversion" was performed on the van at a cost of $11,914.00. The van was then shipped to Wiese where it sat on the lot for nearly ten months prior to the accident. Wiese paid a total of $26,443.25, for the van and Jay Sims (Sims), Wiese's used car manager, testified that the vehicle's fair market value was between $28,000 and $30,000 immediately before the damage.

After the accident, Wiese sued Wells seeking damages. Wells admitted in his answer that he was negligent, but he denied that Wiese sustained the damage alleged in the complaint, i.e. diminution in value and loss of use.

At trial, Sims testified that Wiese did not repair the van and instead chose to sell the van in its wrecked condition. He stated that a car buyer prefers a new car rather than one that has been wrecked and repaired. On two occasions, Sims took the van in its wrecked condition to an auto dealer exchange in Indianapolis, in an attempt to sell the vehicle. Wiese eventually sold the van to Al Meyer (Meyer), a wholesale car dealer, for $16,000.

At trial, Robert Cain (Cain), a former body shop manager at Wiese, testified on Wells' behalf that the damage to the van was primarily cosmetic in nature. Over Wiese's objection, Cain's written repair estimate of $2,793.25 was introduced into evidence.

The special findings entered by the trial court as part of its judgment included the following:

12. That Bob Cain testified that the van could have been repaired for $2,793.25 with the repair estimate open for approximately another $500 for repair to any damage to the heating and cooling system.

13. That the Plaintiff did nothing to mitigate its damages and immediately offered the van for sale in its damaged condition without efforts to repair the vehicle.

14. That the plaintiff received a factory rebate of Seven Hundred and Fifty Dollars ($750.00) and would have paid a sales commission of One Hundred Twenty Five Dollars ($125.00) on the sale of the vehicle had it been sold to a retail consumer.

15. That the plaintiff would have realized $922.75 from the sale of the van as its gross profit.

16. That the Plaintiff received a factory rebate of $750 at the time the van was purchased by the Plaintiff, and therefore that amount, being received by the Plaintiff prior to the collision must be deducted from the gross profit.

17. In addition, the Plaintiff would have to pay the sales commission in the approximate amount of $125 and that sum would have to be deducted from the gross profit.

18. That the net profit from the sale of the vehicle would have been $47.75 had it been sold to a retail consumer at its fair market value.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED based upon the foregoing findings of fact and conclusions of law, that:

The Plaintiff should recover from the Defendant (sic) sum of ... $3,341.00 in damages, being the cost of repair of the vehicle and the net profit expected upon the sale of the vehicle.

*Record* at 85–86.

## ISSUES

1. Did the trial court accurately calculate the amount of damages to compensate Wiese?

2. Did the trial court improperly admit evidence of the cost to repair the van?

3. Did the trial court err in failing to comply with Ind.Code 34–4–33–5 (1988), the comparative fault act?

## DECISION

*ISSUE ONE*—Did the trial court correctly calculate the amount of damages awarded to Wiese?

*PARTIES' CONTENTIONS*—Wiese argues that the trial court erred because Indiana law gives the aggrieved party the option of proving damages to personalty based upon the fair market value of the property before the accident versus the fair market value of the property after the accident, *OR* proof of the cost of repair. Wells responds that if Wiese is permitted to recover the van's fair market value, Wiese has failed to mitigate damages and will receive a windfall.

*CONCLUSION*—The trial court's calculation of damages it awarded to Wiese is erroneous.

 It is a firmly established principle that damages are awarded to fairly and adequately compensate an injured party for his loss, and the proper measure of damages must be flexible enough to fit all circumstances. *Bymaster v. Bankers Nat'l Life Ins. Co.* (1985), Ind.App., 480 N.E.2d 273, *trans. denied; Town of Rome City v. King* (1983), Ind.App., 450 N.E.2d 72; *Indiana Bell Tel. Co., v. O'Bryan* (1980), Ind.App., 408 N.E.2d 178. While an aggrieved party must be compensated, he should not be placed in any better position. *See Potts v. Offutt* (1985), Ind.App., 481 N.E.2d 429; *Downing v. Dial* (1981), Ind. App., 426 N.E.2d 416, *trans. denied.*

Surprisingly, there is little uniformity in the cases addressing the issue of the proper measure of damages when a repairable vehicle is damaged.[1]

■ In arguing that the trial court's award of damages was erroneous, Wiese relies on *Hann v. State* (1983), Ind.App., 447 N.E.2d 1144, *trans. denied*, wherein this court reaffirmed the long standing rule that the measure of damages for personal property that "has been damaged ... but is ... repairable ... is the difference in the fair market value of the property immediately before and immediately after the traumatic event, to which may be added any amount reasonably expended as a proximate result of the wrongful act." *Id.* at 1146. The *Hann* court then stated that this measure of damages could be proven by evidence of

"the difference between the fair market value thereof immediately before and immediately after the traumatic event, or by proof of the cost to repair or restore the property, accompanied by proof:

(1) Of the actual physical damage to the property sustained as a proximate result of the traumatic event,

(2) The cost to repair such damage was reasonable,

(3) Such cost to repair bears a reasonable relationship to the difference between the fair market value of the property just before and just after the traumatic event,

at the option of the party bearing the burden of proof, together with the proof of any other amounts reasonably expended as a proximate result of the wrongful act."

*Hann*, 447 N.E.2d at 1147. Thus the *Hann* court, in announcing the evidentiary

rule by which the measure of damages (the difference in fair market value before and after the traumatic event) might be proven (by evidence of the difference in the fair market value or by evidence of the reasonable cost of repairs and other amounts reasonably expended) essentially adopted the measure of damages set forth in the Restatement (Second) of Torts.

When one is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for

(a) the difference between the value of the chattel before the harm and the value after the harm or, at his election *in an appropriate case,* the reasonable cost of repair or restoration, *with due allowance for any difference between the original value and the value after repairs,* and

(b) the loss of use.

Restatement (Second) of Torts, § 928 (1977) (emphasis supplied) [hereinafter referred to as the Restatement].

Support for adoption of this rule is illustrated in *Farmers Ins. Co. of Arizona v. R.B.L. Inv. Co.* (1983), 138 Ariz. 562, 675 P.2d 1381. In *Farmers*, a new, unsold, 1980 Audi automobile was involved in a collision during a test drive with a vehicle insured by Farmers. The accident was the fault of Farmers' insured. Farmers offered to settle for the cost of repairing the Audi. The dealer refused this offer, contending that it was not adequate compensation for its loss. However, Farmers mistakenly sent the dealership a check for $9,460. The dealership cashed the check and, when it refused to return the amount in excess of the repair cost of $3,122.63, Farmers brought suit.

---

1. *See Perma Ad Ideas of America, Inc. v. Mayville* (1981), 158 Ga.App. 707, 282 S.E.2d 128; *Trailmobile Div. of Pullman, Inc. v. Higgs,* (1973), 12 Ill.App.3d 323, 297 N.E.2d 598; *Gary v. Allstate Ins. Co.* (1971), La.App., 250 So.2d 168 (plaintiff may recover the difference in fair market value of an automobile before and after a collision, *or* the reasonable cost of repair); *National Dairy Prod. Corp. v. Jumper* (1961), 241 Miss. 339, 130 So.2d 922 (the cost of repairs is ordinarily the proper measure of damages when injury is to a commercial vehicle); *Roberts v. Pilot Freight Carriers, Inc.* (1968), 273 N.C. 600, 160 S.E.2d 712 (plaintiff may recover the difference between the fair market value of the vehicle before and after the damage, and evidence of repair costs is competent to aid jury in determining the difference); *Hardman Trucking, Inc. v. Poling Trucking Co.* (1986), 176 W.Va. 575, 346 S.E.2d 551 (cost of repairs may be recovered so long as those costs are less than the fair market value of the property).

In special findings the trial court determined:

9. That the dealer's wholesale factory cost of the car is $15,526.00

10. That the amount of $3,122.63 was spent to fix the car after it was damaged in the accident.

11. That the dealership spent $1,971.91 in interest to the Valley National Bank paid on this particular car during the time it was in the shop being repaired.

12. That also, added to these numbers are normal, average gross profit in the sum of $899.00, and from that total they are deducting the amount of money for which the car was sold, $13,500.00, leaving a difference of $8,009.54 due from plaintiff.

*Farmers*, at 563, 675 P.2d at 1382.

Nevertheless, the trial court awarded Farmers judgment for the difference between the amount of its check to the dealership and the cost of repairs because it concluded that Arizona law did not allow for "an award for decrease in value where the property can be repaired" or "for collection of interest or floor-planning or delay in sale." *Id.* The Arizona court of appeals reversed, adopted § 928 of the Restatement, and modified the trial court's judgment. Based upon the findings that the Audi's pre-collision value was $16,415 ($15,526 wholesale cost plus $889 average gross profit); that after repairs in the amount of $3,122.63 the Audi sold for $13,-500; that, in addition, the dealership loss the use of the Audi in the amount of $1,971.91; the court of appeals ordered judgment in the amount of $8,009.54 (difference in the before and after value, plus cost of repairs, plus loss of use).

In support of the adoption of the Restatement position, the court of appeals recognized that:

There seems no warrant at all for insisting that the owner content himself with the repair costs if they are less than the depreciation, provided depreciation can be and is adequately proven. However satisfactory the repairs may be in, say, the operation of a car, the owner may quite possibly find that the trade-in value of his car is less when he seeks to purchase a new automobile, or that its cash sale value is less throughout the immediate life of the car. *If this sort of depreciation is real, and can be established, there seems no reason at all to deny full compensation by limiting recovery to cost of repairs.*

*Id.* at 564, 675 P.2d at 1383 (emphasis supplied) (quoting D. Dobbs, Remedies, § 5.10, at 380 (1973)).

Wells argues that the concept of mitigation of damages required Wiese to repair the vehicle and because it failed to do so, it is not entitled to any damages over the cost of repairs. However, the principle of mitigation of damages addresses conduct by an injured party that aggravates or increases the party's injuries. The principle does not address the measure of damages resulting from injuries occasioned by the tortfeasor's conduct. Thus, the concept of mitigation of damages has no application to this case; there is no question of any conduct by Wiese that aggravated or increased the extent of the injury to the vehicle.

In summary, the fundamental measure of damages in a situation where an item of personal property is damaged, but not destroyed, is the reduction in fair market value caused by the negligence of the tort feasor. This reduction in fair market value may be proved in any of three ways, depending on the circumstances. First, it may be proved by evidence of the fair market value before and the fair market value after the causative event. Secondly, it may be proved by evidence of the cost of repair where repair will restore the personal property to its fair market value before the causative event. Third, the reduction in fair market value may be proved by a combination of evidence of the cost of repair and evidence of the fair market value before the causative event and the fair market value after repair, where repair will not restore the item of personal property to its fair market value before the causative event.

Here, the trial court determined Wiese's damages at $3,341.00 by adding the cost of repairs ($3,293.25) and Wiese's net profit ($47.75).[2] The trial court determined Wiese's net profit by determining that its gross profit would have been $922.75 had the undamaged vehicle been sold at a fair market value of $28,000, and then subtracting [3] from the gross profit the factory rebate of $750.00 received by Wiese at the time of the purchase, and also subtracting $125.00 for a salesman's commission. Thus, we cannot agree with the trial court's calculation of the net profit at $47.75.[4] Further, the trial court's findings are insufficient on the question of Wiese's damages because they fail to determine the van's post-accident fair market value, assuming it was repaired. Therefore, this court remands this cause to the trial court to redetermine Wiese's damages in accordance with this opinion based upon the evidence properly before the trial court.

*ISSUE TWO* —Did the trial court improperly admit evidence of the cost to repair the van?

*PARTIES' CONTENTIONS* —Wiese argues that evidence of repair costs should not have been admitted because it sought to recover the difference in the van's fair market value as authorized by *Hann*, and the repair costs were therefore irrelevant. Wells responds that because there is a duty upon a plaintiff to mitigate damages, evidence regarding the cost to repair was proper.

*CONCLUSION* —The trial court properly permitted Wells to introduce evidence regarding repair costs of the van.

As discussed in issue 1, *supra*, Wiese is entitled to the difference in the fair market value of its van before and after the accident. As further discussed in issue 1, supra, evidence of the reasonable cost of repairs is relevant to two of the methods of proving the amount of that reduction.

Evidence of the repair cost to the van was properly admitted.

*ISSUE THREE* —Did the trial court err in failing to comply with the comparative fault act?

*PARTIES' CONTENTIONS* —Wiese argues that the trial court failed to comply with Ind.Code 34-4-33-5, the comparative fault act, which requires the trial court to assess the parties' fault, state the total amount of damages, and express a verdict in the form of a calculation of the totality of the plaintiff's damages multiplied by the fault allocable to the defendant. Wells maintains that this argument is irrelevant because the issue of liability is not before us.

*CONCLUSION* —The trial court was not required to comply with the provisions of the comparative fault act because liability is not an issue; therefore, there is no basis for an allocation of fault under the act.

The judgment is reversed and this cause is remanded for further proceedings consistent with this opinion.

SHARPNACK, C.J., and SHIELDS, J., concur.

**2.** We observe that an injured party is not entitled to recover lost profits in addition to the diminution in fair market value. While an amount representing the loss of net profits is generally recoverable, *see Clark's Pork Farms v. Sand Livestock Sys.* (1990), Ind.App., 563 N.E.2d 1292; *Lloyds Of London v. Lock* (1983), Ind. App., 454 N.E.2d 81, it is clear that the economic aspect of profit is already included within the theory of "fair market value." Because damages in this case are measured by the diminution of fair market value, the impact of that diminution, e.g. the sale price at fair market value, is already included. To permit a separate award for lost profits in addition to diminution of fair market value would permit a double recovery of damages.

**3.** The trial court erred in subtracting rather than adding this figure. The economic effect of the rebate was to reduce the cost of the vehicle to Wiese and, thus, it would produce a greater profit rather than a lesser profit.

**4.** With correction of the rebate calculation, the net profit would have been $970.50.