**TERRA–PRODUCTS, INC.,**
Appellant–Plaintiff,

v.

**KRAFT GENERAL FOODS, INC. and Duracell International Inc., Successors to P.R. Mallory, Inc., Appellees–Defendants.**

No. 54A01–9409–CV–313.

Court of Appeals of Indiana.

June 20, 1995.

Transfer Denied Oct. 25, 1995.

Gregory H. Miller, Wernle, Ristine & Ayers, Crawfordsville, for appellant.

Laurence A. McHugh, Joseph R. Fullenkamp, Kimberly D. Finlaw, Barnes & Thornburg, South Bend, for appellees.

### OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Terra–Products, Inc. ("Terra") appeals from the trial court's grant of a motion for summary judgment filed by Kraft General Foods, Inc. and Duracell International, Inc., successors to P.R. Mallory, Inc. (collectively "Kraft"). Terra brought an action against Kraft in which it alleged damages resulting from PCB contamination of two tracts of land owned by Terra. Terra's complaint asserted claims under four theories: (1) strict liability, (2) negligence and negligence per se, (3) nuisance and (4) trespass. Kraft denied liability and asserted a counterclaim against Terra for unjust enrichment. Kraft moved for summary judgment on all counts of Terra's complaint and on its counterclaim. Terra filed a cross-motion for summary judgment on Kraft's counterclaim. The trial court granted both motions.

We affirm.[1]

### ISSUE

Terra presents two issues on appeal. Because we conclude one issue is dispositive, we address only the following question: whether Terra has designated evidence which tends to establish that after remediation of PCB contamination, it incurred damages for a remaining loss in the fair market value of its property.

### FACTS

Terra is an Indiana corporation that produces and sells liquid handling products for industry and agriculture. From the 1960's until June of 1992, Terra conducted business on a tract of land known as "Terra Site" in Montgomery County. Between 1957 and 1969, P.R. Mallory, Inc. had owned property adjacent to Terra Site, known as "Mallory Site," where Mallory operated a battery manufacturing facility. The batteries made by Mallory at that location contained polychlorinated biphenyls ("PCBs"). In 1969, the Mallory facility was destroyed by fire and was never rebuilt.

Sometime after 1969, P.R. Mallory was purchased by Kraft and renamed Duracell International, Inc. Terra then purchased Mallory Site from Kraft in 1975. More than ten years later, in June of 1986, the Indiana Department of Environmental Management ("IDEM") and the United States Environmental Protection Agency ("EPA") determined there was PCB contamination at Mallory Site which violated state and federal regulations. The EPA issued an administrative order to both Terra and Kraft, as Potentially Responsible Parties under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), and re-

---

1. We held oral argument at Eastern High School in Greene County on May 10, 1995.

quired them to implement a cleanup plan. Thereafter, Kraft agreed to be responsible for the cleanup and to pay for the entire cost of remediation.

In 1988, during the cleanup of Mallory Site, Kraft's contractor discovered that Terra Site was also contaminated by the migration of PCBs from Mallory Site. Kraft agreed to perform and pay for the cleanup of Terra Site as well. In June of 1992, Terra sold both Terra Site and Mallory Site at public auction.

Terra then filed this action against Kraft and sought damages for loss of value to its real property in the amount of $830,000.00. Terra claimed damages based on an appraised value of $1.1 million for both sites, assuming no contamination, minus the auction sale price of $270,000.00. Terra also claimed additional damages of more than $3 million, plus the cost of a two-week shutdown when, according to its complaint, Terra was required to move its business to a new location because of the contamination. Kraft filed a counterclaim against Terra and alleged unjust enrichment of approximately $12.5 million, half of the $25 million Kraft paid for the cleanup. Kraft completed the cleanup of both sites in August of 1993, after Terra had initiated this action.

Both parties filed motions for summary judgment, and the trial court granted Kraft's motion on all counts of Terra's complaint. The court also entered summary judgment for Terra on Kraft's counterclaim for unjust enrichment, finding that the entry of judgment for Kraft rendered its counterclaim moot.[2]

## DISCUSSION AND DECISION

### Standard of Review

In reviewing a ruling on a motion for summary judgment, this court applies the same standard applied by the trial court.

*Walling v. Appel Service Co.* (1994), Ind. App., 641 N.E.2d 647, 648–49; *Miller v. Monsanto* (1993), Ind.App., 626 N.E.2d 538, 541. Summary judgment is appropriate only if "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). We resolve any doubt as to a fact, or an inference to be drawn therefrom, in favor of the party opposing summary judgment.[3] *Miller*, 626 N.E.2d at 541.

The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which can be determined as a matter of law. *Beradi v. Hardware Wholesalers, Inc.* (1993), Ind.App., 625 N.E.2d 1259, 1261, *trans. denied.* Even though there may be conflicting facts and inferences regarding certain elements of the claim, we are only concerned with the dispositive or essential facts, and inferences to be drawn therefrom. *Citizens Nat. Bank v. Indianapolis Auto Auction* (1992), Ind.App., 592 N.E.2d 1256, 1257.

### Measure of Damages

■ In this case of first impression in Indiana, we are asked to consider the proper measure of damages for injury to land contaminated by PCBs. Under Indiana law, the measure of damages in a case of injury to real property depends first upon a determination of whether the injury is "permanent" or "temporary." *City of Anderson v. Salling Concrete Corp.* (1980), Ind.App., 411 N.E.2d 728, 732, *trans. denied* (citing *General Outdoor Advertising Co. v. LaSalle Realty Corp.* (1966), 141 Ind.App. 247, 265, 218 N.E.2d 141, 150, *trans. denied* ). Permanent injury to unimproved land occurs where "the cost of restoration exceeds the market value ... prior to injury." *General Outdoor Advertising*, 141 Ind.App. at 267, 218 N.E.2d at 151. If the injury is permanent, the measure of

---

**2.** Terra does not challenge the trial court's determination that its claim for damages to Mallory Site was barred under the six-year statute of limitations for injury to real property and, therefore, "Terra is only seeking relief with regard to Terra Site" for purposes of this appeal. Brief of Appellant at 4.

**3.** The trial court entered extensive findings with its order granting summary judgment for both Terra and Kraft. While we are not bound by the trial court's findings, a trial court's explanation of its reasons for entering summary judgment is helpful on review. *Miller*, 626 N.E.2d at 541 n. 2.

damages is limited to the difference between the fair market value of the property before and after the injury, based on the rationale that "economic waste" results when restoration costs exceed the economic benefit. *See Salling*, 411 N.E.2d at 734. For a temporary injury the proper measure of damages is the cost of restoration. *Id.*

It is undisputed that the cost to remediate Terra Site far exceeded the value of the land itself. Applying the common law distinction between permanent and temporary damage to these facts, the damage to Terra Site would be considered permanent and the measure of damages would be the difference between the value of the property before and after the remediation. That is the measure of damages advocated by Terra on appeal.

Kraft maintains that because it has remediated Terra Site at its expense, "Terra is entitled only to what it has already received" and "its damage claims are moot." Brief of Appellees at 11. In other words, Kraft argues and the trial court determined that remediation repaired Terra Site and, thus, that the PCB contamination was temporary damage. The court agreed with Kraft that Terra could not "seek to recover damages allowed for permanent injury and also to keep the rewards allowed under temporary injury that have already been performed." Record at 377.

The trial court's judgment was based on its determination that "[u]nder recent case law and through statements of the EPA and Indiana legislature, PCB contamination has been treated as a temporary injury despite the high cost of repair." Record at 376. The court relied on the federal district court decision in *In re Paoli R.R. Yard PCB Litigation* (E.D.Pa.1992), 811 F.Supp. 1071, and on Indiana statutes and regulations, and reasoned that those authorities were "contrary to the common law policy of avoiding repair at costs which greatly exceed the value of the land." Record at 376–77; *see* IND. CODE § 13–7–8.5–5.5; IND. ADMIN. CODE tit. 329, r. 2–6–4. The trial court concluded that "the current policy of the State of Indiana as well as the United States ... preempt[s] the

common law doctrine for assessing the appropriate damages to real property and requires PCB contamination to be considered a temporary injury." Record at 377.

We agree with the trial court that in light of the often exorbitant costs of remediation, the traditional common law economic waste analysis is inadequate when measuring damages to land from environmental contamination. Land subject to hazardous waste or PCB contamination is required to be remediated virtually without regard to cost. *See, e.g., State of Ohio v. U.S. Dept. of Interior* (D.C.Cir.1989), 880 F.2d 432, 446 (under CERCLA, preference is for restoration cost as measure of damage to natural resources, at least where restoration is feasible and can be performed at a cost not grossly disproportionate to use value of resource). PCB contamination, therefore, will generally be considered a temporary injury capable of being remediated or "repaired."

Nevertheless, the Third Circuit Court of Appeals has recognized that the traditional distinction between temporary and permanent injury to real property is ill-suited for determining damages in the context of environmental contamination. In *In re Paoli R.R. Yard Litigation* (3rd Cir.1994), 35 F.3d 717, the federal court of appeals[4] reversed the district court's determination that the plaintiffs were not entitled to damages for diminution in value because PCB contamination of their property was "temporary and remediable." *Id.* at 795. The court held that a factual question existed as to whether the injury to the plaintiffs' land was temporary or permanent. *Id.* at 796. The court reasoned that, although the plaintiffs may not have presented evidence of permanent "physical" damage, they did present expert evidence that the PCB contamination had not been completely remediated and that "the *stigma* of living on property which once contained significant amounts of PCBs" constituted "permanent, irremediable damage to property ...." *Id.* at 796–97 (emphasis added).

---

4. The federal district court opinion in *In re Paoli*, upon which the trial court relied, was reversed after the trial court granted summary judgment for Kraft.

The Third Circuit in *In re Paoli* determined it was not necessary, under Pennsylvania law, "that an injury to land ... be physical for it to be considered permanent." *Id.* at 797. The court observed that the term "permanent injury" was meant to apply whenever repair costs would be an inappropriate measure of damages. *Id.* (citing *Wade v. S.J. Groves & Sons Co.* (1981), 283 Pa.Super. 464, 424 A.2d 902, 912). "[A]n appropriate measure of damages is generally defined as what is necessary to compensate fully the plaintiff." *Id.* The court concluded:

This approach is normally consistent with the view that, when physical damage is temporary, only repair costs are recoverable, because in a perfectly functioning market, fully repaired property will return to its former value. Thus, an award of repair costs will be fully compensatory.... Hence, normally, it is only when property cannot be repaired that courts must award damages for diminution in value in order to fully compensate plaintiffs. However, *the market sometimes fails and repair costs are not fully compensatory. In such cases, ... plaintiffs should be compensated for their remaining loss.* Absent such an approach, plaintiffs are permanently deprived of significant value without any compensation.

*Id.* at 797–98 (emphasis added). The Third Circuit then established a three-factor test which plaintiffs must meet to "make out a claim for diminution of value of their property without showing permanent physical damage to the land." *Id.* at 798. Those factors are:

(1) defendants have caused some (temporary) physical damage to plaintiffs' property;

(2) plaintiffs demonstrate that repair of this damage will not restore the value of the property to its prior level; and

(3) plaintiffs show that there is some ongoing risk to their land.

*Id.*

■ The law of damages in Indiana is consistent with the Third Circuit's interpretation of Pennsylvania law concerning the proper measure of damages for environmental contamination. As in Pennsylvania, the aim in awarding damages in Indiana is to fairly and adequately compensate an injured party for his loss. *See Wiese–GMC, Inc. v. Wells* (1993), Ind.App., 626 N.E.2d 595, 597, *trans. denied.* In discussing the appropriate measure of damages which will fully compensate the plaintiff for an item of personal property that is damaged but not destroyed, this court has stated:

the fundamental measure of damages is the reduction in fair market value caused by the negligence of the tort feasor. This reduction in fair market value may be proved in any of three ways, depending on the circumstances. First, it may be proved by evidence of the fair market value before and the fair market value after the causative event. Secondly, it may be proved by evidence of the cost of repair *where repair will restore the personal property to its fair market value before the causative event.* Third, the reduction in fair market value may be proved by a combination of evidence of the cost of repair and evidence of the fair market value before the causative event and the fair market value after repair, *where repair will not restore the ... property to its fair market value before the causative event.*

*Id.* at 599 (emphases added).

■ We see no reason why the *Wiese–GMC* combination or hybrid theory of recovery, which utilizes both the cost of repair and any reduction in the property's value after repair, should not also apply to environmental damage to real property. Generally, the proper measure of a plaintiff's damages "must be flexible enough to fit all circumstances." *Id.* at 597. If the plaintiff can demonstrate that repairs to real property fail to restore the land to its former value, recovery of damages for the property's reduction in value is the only measure of damages which will fully compensate the landowner for his loss. More specifically, in the context of environmental contamination of land a party should be entitled to recover as damages any proven reduction in the fair market value of real property remaining after remediation, i.e., the remaining loss damages. *See In re Paoli*, 35 F.3d at 797; *Wiese–GMC*, 626 N.E.2d at 599.

The fundamental measure of Terra's damages is any reduction in the fair market value of Terra Site caused by Kraft. *See Wiese–GMC*, 626 N.E.2d at 599. If as Terra contends the value of Terra Site after remediation was less than its value before discovery of PCB contamination, the property was permanently damaged. Thus, Terra would be entitled to compensation for any "remaining loss" in the property's fair market value after remediation in that, under such circumstances, remediation would be inadequate to compensate Terra fully for its loss.

■ We cannot agree with Kraft's argument that its remediation of Terra Site necessarily relieved it of any further liability to Terra for common law damages. CERCLA serves two essential purposes: (1) to provide a swift and effective response to hazardous waste sites and (2) to place the cost of that response on those responsible for creating or maintaining the hazardous condition. *United States v. Mexico Feed & Seed Co.* (8th Cir. 1992), 980 F.2d 478, 486. CERCLA is not intended to exclude other remedies available to an injured landowner but explicitly provides that "[n]othing in this chapter shall affect or modify in any way the obligations of liabilities of any persons under other Federal or *State law, including common law,* with respect to the releases of hazardous substances or other pollutants or contaminants . . . ."[5] 42 U.S.C. § 9652(d) (emphasis added); *see Cropwell Leasing Co. v. NMS, Inc.* (5th Cir.1993), 5 F.3d 899, 901. Restoration under CERCLA is not, as a matter of law, Terra's exclusive remedy for damage to its land. *See Cropwell Leasing,* 5 F.3d at 901; *United States v. Montrose Chemical Corp.* (C.D.Cal.1992), 788 F.Supp. 1485, 1496 ("CERCLA is not an exclusive remedy, and . . . Defendants are entitled to bring counter-

claims based on *both* CERCLA and tort law.") (emphasis in original).

■ Nevertheless, Terra has not met its burden of designating evidence which would tend to establish that Kraft's remediation did "not restore the value [of Terra Site] to its prior level" or "to its fair market value before the causative event." *In re Paoli,* 35 F.3d at 797; *Wiese–GMC,* 626 N.E.2d at 597. Kraft offered expert testimony that its remediation of Terra Site had been completed in February of 1994, at least seven months before both parties moved for summary judgment. However, the record is devoid of any evidence of the value of Terra Site after the restoration, that is, evidence tending to prove the post-remediation reduction in the fair market value of Terra Site. Terra only established the auction sale price of Terra Site, but it is undisputed that while bidders were informed Kraft had agreed to clean up the property, the sale occurred before remediation.[6] There is no evidence in the record to support Terra's assertion that the auction price represents the value of Terra Site after remediation.

Even if we were to conclude that the auction price of Terra Site was a reliable measure of its post-remediation value, there is also no evidence of Terra Site's fair market value before PCB contamination was discovered. The designated evidence discloses that the $1.1 million appraisal, which assumed no contamination, included *both* Terra Site and Mallory Site. Terra's only remaining viable claim for damages concerns Terra Site, *see supra* note 1, and it cannot be inferred from the combined appraisal that Terra has incurred a loss in Terra Site's fair market value.[7]

---

5. CERCLA also contains a provision which states that "[n]othing in this Act shall be construed as pre-empting any state from imposing an additional liability . . . with respect to the release of hazardous substances within such state." 42 U.S.C. § 9614(a). This other "savings" statute has been construed as leaving "untrammeled the right of an individual to invoke principles of statutory or common law in damage actions pendant [sic] to CERCLA. . . ." *Allied Towing Corp. v. Great Eastern Petroleum Corp.* (E.D.Va.1986), 642 F.Supp. 1339, 1351.

6. Terra alleged in its complaint, and both parties assumed at oral argument, that Terra Site was sold at auction for $270,000.00. However, this was the sale price for both Terra and Mallory Sites. The record indicates that Terra Site was actually sold separately for $120,000.00. Record at 264.

7. We are also unpersuaded that a Fish Consumption Advisory, which remains in effect for Little Sugar Creek bordering Terra Site, demonstrates Terra's remaining loss damages for Terra Site.

Finally, at oral argument Terra maintained that a letter from a bank, which expressed reservations about extending a loan to Terra due to environmental concerns at Terra Site, establishes that the property was permanently damaged with the "stigma" which attaches to contaminated land. *See* Record at 245B; *In re Paoli*, 35 F.3d at 797. This argument also fails because the bank's letter was written before the remediation of Terra Site had been completed and specifically advised Terra that to obtain a loan, it would be required to secure a certification that the property was "free of any environmental risks or hazards." Record at 245B. The letter assumed environmental contamination and did not consider the subsequent remediation of Terra Site, and, thus, it does not establish any remaining loss damages. In sum, on this record we can only speculate that Terra Site suffers from any permanent damage.

The hybrid theory of recovery acknowledged by the Third Circuit in *In re Paoli*, and by this court in *Wiese–GMC*, may well apply under circumstances where a reduction in the fair market value of real property after remediation of environmental contamination supports recovery of both temporary and permanent damages in order to compensate fully the plaintiff. *See In re Paoli*, 35 F.3d at 797; *Wiese–GMC*, 626 N.E.2d at 599. Such is not the case here. The only measure of damages supported by the designated evidence was the cost of remediating PCB contamination at Terra Site, a temporary injury. There is no evidence in the record to establish the value of the land before and after remediation and, thus, no evidence of any permanent damage to Terra Site. Simply put, Terra has failed to produce or designate evidence to establish a genuine issue of material fact on the most critical element in the permanent damage equation: the amount, if any, of the "remaining loss" or reduction in fair market value of Terra Site after remediation.

We hold that the trial court properly concluded from the designated evidence that

Terra had already been compensated for its proven loss. The trial court did not err when it granted summary judgment for Kraft.

The judgment of the trial court is affirmed.

BAKER and ROBERTSON, JJ., concur.

PCB contamination of the creek does tend to establish that there is "some ongoing risk" to Terra's land as required in the third prong of the *In re Paoli* test. Nevertheless, Terra has not designated evidence which tends to show that contamination of Little Sugar Creek has or will affect Terra Site's post-remediation fair market value. Such a showing is still a prerequisite to recovery for permanent injury to land under both *In re Paoli* and *Wiese–GMC*.