RICHARD HARRIS, Third-Party Plaintiff-Appellant, v. SCOTT PETERS, Third-Party Defendant-Appellee.

First District (3rd Division)   No. 1—92—3435

Opinion filed June 21, 1995.

Jeffrey H. Bunn, of Chicago, for appellant.

John R. Adams, of Chicago, for appellee.

JUSTICE TULLY delivered the opinion of the court:

Third-party plaintiff Richard Harris appeals from an order of the circuit court dismissing with prejudice his action against third-party defendant Scott Peters. It is from this order that Harris now appeals to this court pursuant to Supreme Court Rule 301 (134 Ill. 2d R. 301).

## FACTUAL BACKGROUND

On October 8, 1988, Harris entered into a lease agreement with U.B. Vehicle Leasing, Inc. (hereinafter UB), whereby Harris leased a 1988 Audi from UB. On September 6, 1991, the Audi was totaled in a collision with Peters' vehicle. Peters' insurer tendered Harris a check for the fair market value of the Audi. Harris endorsed the check over

to UB, which under the terms of the leasing agreement applied the funds toward paying the balance due it under the agreement's terms.

On February 20, 1992, UB filed a complaint against Harris, seeking $5,560.48, the balance remaining on the lease. On April 2, 1992, Harris filed his answer to UB's complaint and a two-count third-party complaint against Peters and his insurer seeking judgment in an amount equivalent to any judgment which might be entered against Harris in the underlying UB action. In essence, Harris was seeking the difference between the Audi's fair market value and the total amount due over the term of the vehicle lease.

On May 18, 1992, Peters and the insurance company filed a motion to dismiss the third-party complaint. Thereafter, the circuit court dismissed the count against Peters and allowed Harris to voluntarily dismiss the count against the underwriter. The instant appeal followed.

## ISSUE PRESENTED FOR REVIEW:

Whether the trial court was correct in ruling on the motion to dismiss that Harris was properly compensated for the property loss that he suffered in the accident with Peters.

## OPINION

■ Compensatory damages are those which are awarded to a person as compensation, indemnity or restitution for a wrong or injury sustained by him. (Restatement (Second) of Torts § 901, at 451 (1979); 15 Ill. L. & Prac. *Damages* § 31, at 377 (1968); see also *Dial v. City of O'Fallon* (1980), 81 Ill. 2d 548, 558.) The purpose of awarding compensatory damages is to make the injured party whole and restore him to the position he was in before the loss (*Rittenhouse v. Tabor Grain Co.* (1990), 203 Ill. App. 3d 639, 650-51, citing Restatement (Second) of Torts § 901, Comment *a*, at 452 (1979)), but not to enable him to make a profit or windfall on the transaction. (*McLane v. Russell* (1989), 131 Ill. 2d 509, 523.) Accordingly, when personal property is destroyed or rendered useless, the measure of damages is the fair market value of the thing in question immediately prior to its destruction. (*Rittenhouse*, 203 Ill. App. 3d at 639; *Gannon v. Freeman* (1982), 103 Ill. App. 3d 917, 919.) Applying these principles to the case *sub judice*, it is clear to us that the trial court did not err in dismissing Harris' complaint.

Harris urges that the only way that he can be made whole is if he is awarded the difference between the Audi's fair market value and the total amount due over the term of the vehicle lease. We disagree. We believe that Harris was made whole when he was given

the fair market value of the car, which necessarily compensates for loss of use and enjoyment; Peters took a car from Harris and was given back the car in the form of its cash equivalent. However, if Peters is then required to pay Harris' lease obligation in full, then Harris' economic position is enriched.

■ Immediately before the accident Harris had the car and an obligation to pay UB an amount of money in excess of the fair market value of the car. In other words, a negative net on the transaction. As things stand now Harris has the car (in the form of the cash payment) and the obligation to pay UB. However, if Peters is forced to pay off Harris' lease, Harris will be enriched to the extent that he has rid himself of the negative net—the obligation to pay UB which he had before the accident.

This economic or compensatory analysis holds true also if one examines this case from the standpoint of causation. The negative net is the "benefit of the bargain" Harris negotiated with UB and was in no way under the control of Peters and, consequently, it is a loss that does not flow directly from the tort committed by Peters and is therefore, not recoverable.

In light of the foregoing, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI and CERDA, JJ., concur.