FILED

Feb 15 2017, 8:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Brian R. Gates
Jones Obenchain, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jason Bokori,<br>*Appellant-Defendant,*<br><br>v.<br><br>Jasmina Martinoski,<br>*Appellee-Plaintiff.* | February 15, 2017<br><br>Court of Appeals Case No.<br>45A03-1603-SC-519<br><br>Appeal from the Lake Superior<br>Court.<br><br>The Honorable Michael Pagano,<br>Magistrate.<br><br>Cause No. 45D09-1512-SC-2356 |

**Bailey, Judge.**

# Statement of the Case

Jason Bokori ("Bokori") collided with Jasmina Martinoski's ("Martinoski") leased car, totaling it. Insurance payments covered Martinoski's medical expenses and a portion of the cost of her totaled vehicle, but a balance remained on the lease. Martinoski sued Bokori for the balance in small claims court, and the court entered judgment in her favor. Bokori now appeals.

We affirm.

# Issue

Bokori presents one issue for our review, whether the small claims court committed clear error in determining fair market value and awarding damages.

# Facts and Procedural History

On December 22, 2013, Bokori and Martinoski, driving separate vehicles, were involved in a collision. Martinoski's leased 2013 Toyota Corolla was totaled in the accident.

Martinoski had leased the vehicle with financing through Toyota Financial Services ("Toyota Financial") just five months prior to the collision. The balance on the financing agreement was $22,676.52 at the time of the collision. Martinoski's insurer, Nationwide Mutual Insurance ("Nationwide"), paid Toyota Financial $17,530.44 to purchase the totaled vehicle. After that payment, Martinoski still owed $5,146.08 under her vehicle financing

agreement, an amount Martinoski believed would be paid by Bokori's insurer, Progressive Insurance ("Progressive"). However, Toyota Financial pursued collection of that amount and late fee charges against Martinoski when Progressive did not pay the difference.

[6] Martinoski sued Bokori and Progressive in small claims court to recover the amount she still owed under the lease agreement plus the late fee charges and court costs. In her notice of claim, Martinoski alleged that Bokori was responsible for the accident, and that he and Progressive owed her the balance remaining on her lease plus late fees and court costs totaling $6,000.00.

[7] During cross-examination of Martinoski, Progressive's attorney tendered Nationwide's market report prepared by C.C.C. Valuescope Claims Services. However, there was no proponent for the document, and Martinoski did not recognize it. The small claims court, while acknowledging there was no proponent for the exhibit, admitted the document without objection. The report shows the date of the accident, that Martinoski was the lessee of the totaled vehicle, and correctly identifies the vehicle identification number for the Corolla. The report, which was used in negotiation between Progressive and Nationwide in reaching a settlement on what would be paid to Toyota for Martinoski's car, concludes that after conducting research into the local market, the fair market value of the vehicle at the time of the accident was $17,312.00.

[8] The small claims court entered judgment in favor of Progressive because there was no contractual relationship between it and Martinoski, and, as such,

Martinoski could not sue Progressive directly. The court then found Bokori was completely responsible for the accident. The trial court recognized that it had admitted into evidence the report used by Progressive and Nationwide in their negotiations as to the value of Martinoski's vehicle. However, the trial court concluded that "with no proponent for it, I'm not satisfied that it's sufficient to [establish fair market value]." Tr. pp. 30-31. Having also determined that Bokori failed to establish any affirmative defense, the trial court entered judgment against him in the amount of $5,446.08—the balance of Martinoski's indebtedness on the lease, her late fees, and court costs.

[9] This appeal ensued.

# Analysis and Decision

[10] Bokori brings his appeal after a negative judgment against him in the small claims court. We review a small claims court's judgment for clear error. *Bonecutter v. Discover Bank*, 953 N.E.2d 1165, 1171 (Ind. Ct. App. 2011), *trans. denied*. "[E]xpeditious resolution is essential to the efficacy and attractiveness of the optional small claims process." *Fortner v. Farm Valley-Applewood Apartments*, 898 N.E.2d 393, 398 (Ind. Ct. App. 2008).

[11] Here, Martinoski did not file an appellee's brief, and thus we may reverse upon a *prima facie* showing of reversible error—but even so, we still may not reweigh evidence or reassess witness credibility. *Heartland Crossing Found., Inc. v. Dotlich*, 976 N.E.2d 760, 762 (Ind. Ct. App. 2012). In his appeal, Bokori argues that

Martinoski's claim rests on a "mistaken legal theory" (Appellant's Br. at 5), that Martinoski's proper remedy for loss of the vehicle had already been provided, and that the trial court erred when it found otherwise.

[12] "It is a well-established principle that damages are awarded to fairly and adequately compensate an injured party for her loss, and the proper measure of damages must be flexible enough to fit the circumstances." *Bader v. Johnson*, 732 N.E.2d 1212, 1220 (Ind. 2000). "In tort actions generally, all damages directly related to the wrong and arising without an intervening agency are recoverable." *Id.*

[13] The general rule is that a plaintiff's compensatory damages for property destroyed by a tortfeasor shall be the fair market value of the property at the time of loss. *Ridenour v. Furness*, 546 N.E.2d 322, 325 (Ind. Ct. App. 1989). "Fair market value is defined as the value a willing seller will accept from a willing buyer for a good." *Warrick Cty. v. Waste Mgmt. of Evansville*, 732 N.E.2d 1255, 1258 n.1 (Ind. Ct. App. 2000). A plaintiff must bear the burden of proving the fair market value of the property. *Campins v. Capels*, 461 N.E.2d 712, 719 (Ind. Ct. App. 1984). Evidence of fair market value may include the plaintiff's testimony, the price paid upon purchase, testimony from skilled witnesses, and other competent forms of evidence. *See, e.g.*, *City of Carmel v. Leeper Elec. Servs, Inc.*, 805 N.E.2d 389, 394-95 (Ind. Ct. App. 2004) (accepting as competent but not dispositive evidence testimony concerning the purchase price of land taken in a condemnation), *trans. denied*; *Wiese-GMC, Inc. v. Wells*, 626 N.E.2d 595, 599-600 (Ind. Ct. App. 1993) (remanding to the trial court for

recalculation of damages from evidence properly before the trial court), *trans. denied*. Nevertheless, a plaintiff should not receive a recovery that constitutes a windfall. *Dado v. Jeeninga*, 743 N.E.2d 291, 294 (Ind. Ct. App. 2001). However, the plaintiff need not bear the burden of negating the possibility of a windfall; that burden falls on the defendant. *Id.* at 295.

[14] Here, Bokori argues that the trial court erred in awarding Martinoski compensation of $5,446.08, representing the difference between the total purchase price of the car, which was less than six months old at the time of the accident, and what Bokori argues is the fair market value[1]: the amount of money Bokori's insurer and Martinoski's insurer negotiated between themselves as a suitable measure of compensation to be paid to Toyota Financial Services for the destruction of the car. Put another way, Bokori argues what the fair market value *is* and which evidence the trial court should have relied upon, though he couches it as a legal issue.

[15] The trial court was presented with several items of evidence: Martinoski's testimony about the recent purchase price of the vehicle in a retail transactional setting, documentation to that effect in the form of an acceleration statement from Toyota Financial Services, and a market value report used in settlement negotiations between the parties' insurers. Assessing the evidence at the end of the trial, the court stated: "At the end of the day the question is whether or not

---

[1] A comparatively *de minimis* portion of the judgment was ordered to compensate Martinoski for court costs and late fees associated with Toyota Financial Services' collection efforts against her.

the affirmative defense of free market value or fair market value's been established; it hasn't. Not under the case law I've seen…. I, I admitted it [the insurance valuation], but with no proponent for it, I'm not satisfied that it's sufficient to get there."[2] (Tr. at 30-31.)

[16] Thus, the trial court heard evidence of fair market value and, acting within its role as fact-finder, weighed the evidence before it. The trial court concluded that Martinoski's evidence of fair market value—taking the form of her testimony and the acceleration statement from Toyota Financial Services—was more credible than Bokori's proffered evidence, which took the form of the valuation report used in settlement discussions by the parties' insurers. The court's determination of damages was within the range of evidence presented at trial, and whether Bokori's evidence was worthy of credit was a matter within the trial court's purview. That Bokori characterizes his position as a question of law is not determinative: his argument at bottom requests that we reweigh the trial court's assessment of the weight and credibility of the evidence before it. We are not at liberty to do so. *See Heartland Crossing Found.*, 976 N.E.2d at 762.

[17] The dissent sees this differently. Noting that Martinoski leased the vehicle and accepted a personal injury-related settlement, the dissent would hold that

---

[2] The trial court's reference to an affirmative defense appears to refer to this Court's decision in *Dado*. It was not incumbent upon Bokori to establish fair market value, though he was certainly permitted to offer such evidence. *See Dado*, 743 N.E.2d at 295. Rather, it was incumbent upon Bokori to establish that Martinoski would be compensated excessively if she received as fair market value the amount of money she had requested as damages. *See id.*

Martinoski incorrectly sought compensation for property damage to a car for which she was not entitled to receive any kind of payment. The dissent also argues that the negotiated amount Toyota Financial received was the fair market value for the destroyed vehicle.

[18] We might agree with the dissent were the evidence and arguments in this case other than what they are. The dissent's argument that Martinoski cannot recover for damages related to a leasehold—something apparently akin to arguing that Martinoski lacks a claim for which relief can be granted under Trial Rule 12(B)(6)—is not an argument Bokori made at trial. And, because it is outside our role to advocate for a party, issues not raised by a party are waived. *Perry v. Anonymous Physician 1*, 25 N.E.3d 103, 105 n.1 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied*. Here, Bokori has essentially conceded that Martinoski was entitled to pursue this claim. *See* Ind. Trial Rule 15(B) (providing that issues not raised in the pleadings but tried by express or implicit consent of the parties "shall be treated in all respects as if they had been raised in the pleadings").

[19] Thus, Bokori's appeal focuses solely on the question of the trial court's determination of fair market value. That Martinoski was not the owner of the vehicle does not *ipso facto* preclude the trial court from hearing or crediting her testimony as to the value of the vehicle, just as surely as Martinoski not owning the vehicle did not preclude her from obtaining insurance. Simply put, she had a contractual interest in the vehicle's use, and thus a financial stake in any resulting payout for damage to the vehicle. We are not at liberty to aid Bokori,

a party represented by counsel in a small claims case, by creating arguments for him, and we are thus not at liberty to take the dissent's path.

[20] Nor are we at liberty to presume knowledge of the contents of any of a number of documents that might, had Bokori introduced them into evidence, have precluded a recovery. The record includes testimony concerning the existence of a lease and its term. But the lease document itself was not introduced into evidence, and thus we cannot properly rely on what it might say as introducing a bar to Martinoski's recovery. There is also no evidence about the extent to which some or all of Martinoski's claims were subrogated either to Toyota Financial or her insurer. Martinoski testified that she signed some form of a settlement agreement and received a relatively nominal amount of compensation for her personal injuries, but she was unable to testify to or explain any of the settlement beyond that. Rather, Martinoski testified only that she was led to believe that Progressive would pay the entirety of the lease balance, and Bokori did not introduce a settlement agreement that might have served to preclude a claim by Martinoski by means of subrogation. Any of these might have yielded a different result at trial—but Bokori did not make such arguments or rely upon any of these documents.

[21] We are left, then, to resolve the appeal with the evidence presented at trial— Martinoski's testimony, the invoice from Toyota Financial that Martinoski introduced into evidence, and the market survey Bokori introduced into evidence—and the argument Bokori actually made on appeal, which focuses only on the trial court's determination of fair market value. Bokori's argument,

cloaked as a legal question, actually challenges the trial court's determination of weight and credibility: Bokori suggests as a legal conclusion that an insurance market value report, supported by no testimony to explain how it was generated or its assumptions, is determinative of value—even as Martinoski provided testimony concerning the underlying purchase transaction for the vehicle and supporting documentation from Toyota Financial. Such an argument does not rise to the level of *prima facie* error required to obtain a reversal here, and its invitation to reweigh evidence is one we cannot take up.

[22] Bokori worries in his brief that flexibility in the measurement of market value would impose unreasonable damages. But the argument that Martinoski, as a lessee, could not provide evidence as to the value of the vehicle leads to a rule creating the possibility that lessees in the future could be subject to the whims of settlement discussions. Here, for example, the money paid to Toyota Financial was the result of a negotiated amount between two insurers. If the insurance companies had negotiated a settlement of $10,000, the dissent's rationale would leave Martinoski with more than $12,000 in debt owed to Toyota Financial— not the nearly $6,000 at issue here—and with no apparent recourse. Moreover, the restriction Bokori suggests cuts against the relaxed evidentiary rules that advance the goal of efficient disposition of small claims cases. The fact finder is free to accept, reject, or determine a value within the range of values presented by the parties, *Cox v. Matthews*, 901 N.E.2d 14, 24 (Ind. Ct. App. 2009), *trans. dismissed*, but the plaintiff is not obliged to sit silently while her interest is totally excluded from consideration by the finder of fact.

Had Bokori presented other arguments or introduced other evidence, our result might have been different. But we are not bound to do a litigant's work, and we are not at liberty to reargue the case or reweigh evidence. We therefore affirm the trial court's judgment.

Affirmed.


Brown, J., concurs.
Barteau, Sr. J., dissents with separate opinion.

ATTORNEY FOR APPELLANT

Brian R. Gates
Jones Obenchain, LLP
South Bend, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jason Bokori, | February 15, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 45A03-1603-SC-519 |
| v. | Appeal from the Lake Superior Court. |
| Jasmina Martinoski, | The Honorable Michael Pagano, Magistrate. |
| *Appellee-Plaintiff.* | Cause No. 45D09-1512-SC-2356 |

**Barteau, Senior Judge, dissenting**

The majority concludes that appellate review and disposition of this case hinges on the sufficiency of the evidence of fair market value, and would dispose of this case as an impermissible request by Jason Bokori to reweigh that evidence. I believe that the trial court did not appropriately apply the law, committing clear error, and, therefore, I must respectfully dissent.

Financial choices made by individuals often lead to outcomes that seem unfair or inequitable. When that happens, it is natural to seek recourse against those

perceived to be at the source of the unfairness or inequity. I am not unsympathetic to the plight of Jasmina Martinoski, a single mother, who had leased her 2013 Toyota Corolla from Toyota Financial Services just five months before she was involved in a vehicular accident for which Bokori was legally determined to be completely at fault. Indeed, she refused medical treatment because, just a short time prior to the Christmas holiday, she could not afford to take time off work. Instead, she chose to accept the nominal amount tendered by insurance as compensation for her physical injuries and relied upon verbal representations by a Progressive claims adjuster named Dan McKee that her property loss would be completely covered. Tr. pp. 7-9.

[27]     Nationwide, her insurance company, determined that the leased vehicle was a total loss, and paid Toyota Financial Services $17,530.44 for it. Toyota Financial received and accepted that amount as the negotiated price, which it designated as salvage, for the vehicle. *See* Plaintiff's Ex. 2. Pursuant to statute, a lessor, such as Toyota Financial, gives a lessee, such as Martinoski, the right to use and possess a vehicle for consideration for a specific period, with the option to become the owner at the end of the term. *See* Ind. Code § 24-5-16.5-4 (2015). Consequently, since the vehicle was destroyed five or six months into the three-year lease, Toyota Financial was the owner of the vehicle, and received and accepted a negotiated payment for the vehicle. Thus, the compensatory damages arising from the tort had been recovered by the owner. *See* Restatement (Second) of Torts §§ 901, 927 (1979)).

[28] Martinoski, however, was left with a $5,146.08 obligation remaining on her lease agreement with Toyota Financial—the shortfall between the lease amount and the insurance payoff—an amount which she could not afford to pay after purchasing a new Toyota vehicle, and an amount she testified she believed, but had nothing in writing to that effect, that Progressive, Bokori's insurer, and Nationwide, her insurer, would cover between them. She asked Nationwide to re-open her claim when Toyota Financial Services proceeded to attempt to collect the remaining debt and late fees from her pursuant to the lease agreement. Nationwide subsequently dropped her coverage.

[29] Martinoski, who appeared in small claims court pro se because she could not afford an attorney, clarified for the court that she was only seeking compensation for property damage. When the trial court asked if she was seeking compensation for medical bills, she replied, "right now it was the property damage." Tr. p. 6. The trial court summed up her response by noting, "just property damage; all right." *Id.* However, Martinoski testified to the amount remaining on the lease for her totaled vehicle, the late fees assessed by Toyota Financial against her for failure to make payments, and the costs associated with bringing the small claims action.

[30] On cross-examination by counsel for Progressive, Bokori's insurer, Martinoski was asked, "You're not contending that this amount, the $22,676.52 represents the fair market value of your vehicle at the time that it was actually totaled, are you?" *Id.* at 24. Martinoski replied, "I don't understand that. I know I leased the vehicle. I'd never leased a vehicle. Whatever it was, that's what I signed the

lease for and I was supposed to return it after three years." *Id.* Progressive's counsel further argued, using Martinoski's Exhibit 2, "Okay. Okay; but, here again, it's showing a selling price of $17,530.44 that your vehicle was traded into Toyota, or that Toyota received to pay it off after the accident, correct?" *Id.* at 24-25. Thus, it is clear that Martinoski was actually seeking to be compensated not just for the salvage value of the car, but also for the amount of her contractual obligation under the lease agreement. It is equally clear that Bokori, through counsel for Progressive, was arguing that Martinoski had been fully compensated for her tort claim against him, that her small claims action emanated from the contractual obligations under her lease agreement with Toyota Financial, and that recovery of further damages from Bokori, the tortfeasor, would therefore result in a windfall to her.

[31] "Generally speaking, damages for total destruction to personal property are measured by the fair market value of the property at the time of loss." *Ridenour v. Furness*, 546 N.E.2d 322, 325 (Ind. Ct. App 1989). This is a longstanding precept of tort law. "Fair market value is the price at which property would change hands between a willing buyer and seller where neither is under any compulsion to consummate the sale." *Brown v. Ind. Family & Soc. Servs. Admin.*, 45 N.E.3d 1233, 1238-39 (Ind. Ct. App. 2015). Undoubtedly, the victim of the total destruction of property by a tortfeasor, can hardly be called a willing seller. Nonetheless, that is the legal standard to be applied. "The burden of proving the value of goods destroyed by another is upon the complainant." *Campins v.*

*Capels*, 461 N.E.2d 712, 719 (Ind. Ct. App. 1984) (citing *So. Ind. Gas & Elec. Co. v. Ind. Ins. Co.*, 178 Ind. App. 505, 383 N.E.2d 387 (Ind. 1978)).

[32] The trial court held that without a proponent for Defendant's Exhibit 1, there was insufficient evidence of the fair market value of the leased vehicle. Using the trial court's rationale, if fair market value was not established, then Martinoski was not entitled to an award of damages. The burden was on Martinoski to establish the value. *Campins*, 461 N.E.2d at 719. Bokori's burden was to establish that Martinoski would be excessively compensated by the award of the damages requested. *See Dado v. Jeeninga*, 743 N.E.2d 291, 295 (Ind. Ct. App. 2001). If there was insufficient evidence of fair market value of the leased vehicle, then the burden never shifted to Bokori to establish excessive compensation.

[33] Under my reading of the evidence, it is clear that Martinoski sought to recover from Bokori the amount she owed Toyota Financial under the lease. Bokori did not cause her to incur that loss. Instead, he only deprived Toyota Financial of the value of the car itself, for which Toyota Financial was compensated.

[34] I find persuasive the rationale set forth in *Harris v. Peters*, 653 N.E.2d 1274 (Ill. App. Ct. 1995). In that case, the lessee of a vehicle was involved in a collision, resulting in the total destruction of the vehicle. Harris, the lessee, received from his insurer a check for the fair market value of the vehicle. He signed over the check to the leasing company, which applied that amount against the balance due under the lease agreement. UB, the leasing company, filed a complaint

against Harris for the balance due on the lease. Harris filed an answer and third-party complaint against Peters, the tortfeasor, and his insurer seeking a judgment for damages in the amount of any judgment entered against Harris in the underlying action against him. Put differently, Harris sought the difference between the fair market value of the vehicle and the amount due under the vehicle's lease agreement. The tortfeasor filed a motion to dismiss the count against him, which was granted, and Harris voluntarily dismissed the count against Peters' insurer.

[35] On appeal, the issue presented was whether the trial court correctly dismissed Harris' third-party complaint against Peters after finding that Harris was properly compensated for the property loss he suffered in the accident. The Illinois Court of Appeals followed the language of the Restatement, finding that compensatory damages arising from damages sustained through a tort are measured as the fair market value of the property immediately prior to its destruction. 653 N.E.2d at 1275. The trial court's dismissal was affirmed because to force the tortfeasor to pay off the lease would result in a windfall to Harris, who had the obligation to pay off the lease prior to the accident. *Id.* at 1276. "The negative net is the 'benefit of the bargain' Harris negotiated with UB and was in no way under the control of Peters and, consequently, a loss which does not flow directly from the tort committed by Peters and therefore not recoverable." *Id.*

[36] This argument was made by Bokori during the small claims court hearing and on appeal. *See* Appellant's Br. p. 5 ("Fair market value is not the sum still owed

on a vehicle under a lease or a car loan. . . . Martinoski's mistaken legal theory was that Bokori owed her the difference between what she owed on the lease and what her insurer had paid for the vehicle when it was totaled (i.e., $17,530.44)"); Tr. pp. 18-19 ("Because it's not our obligation.…The standard measure of damages that she's entitled to recover for total destruction of personal property is the fair market value of the item at the time that it was destroyed. That's what she received."). Consequently, this question of law was not waived at trial and is not waived for our review.

[37] Martinoski had a remaining contractual liability on the leased vehicle that was totally destroyed as a consequence of Bokori's tortious actions. Although the result of the financial choices made seems to lead to a harsh result, Martinoski has no legal remedy against Bokori for her contractual liability under the lease agreement. For these reasons, I must respectfully dissent from the majority opinion affirming the trial court's decision.