Barteau, Senior Judge,
dissenting
The majority concludes that appellate review and disposition of this case hinges on the sufficiency of the evidence of fair market value, and would dispose of this case as an impermissible request by Jason Bokori to reweigh that evidence. I believe that the trial court did not appropriately apply the law, committing clear error, and, therefore, I must respectfully dissent.
Financial choices made by individuals often lead to outcomes that seem unfair or inequitable. When that happens, it is natural to seek recourse against those perceived to be at the source of the unfairness or inequity. I am not unsympathetic to the plight of Jasmina Martinoski, a single mother, who had leased her 2013 Toyota Corolla from Toyota Financial Services just five months before she was involved in a vehicular accident for which Bokori was legally determined to be completely at fault. Indeed, she refused medical treatment because, just a short time prior to the Christmas holiday, she could not afford to take time off work. Instead, she chose to accept the nominal amount tendered by insurance as compensation for her physical injuries and relied upon verbal representations by a Progressive claims adjuster named Dan McKee that her property loss would be completely covered. Tr. pp. 7-9.
Nationwide, her insurance company, determined that the leased vehicle was a total loss, and paid Toyota Financial Services $Í7,530.44 for it, Toyota Financial received and accepted that amount as the negotiated price, which it designated as salvage, for the vehicle. See Plaintiffs Ex. 2. Pursuant to statute, a lessor, such as Toyota Financial, gives a lessee, such as Martinoski, the right to use and possess a vehicle for consideration for a specific period, with the option to become the owner at the end of the term. See Ind. Code § 24-5-16.5-4 (2015). Consequently, since the vehicle was destroyed five or six months into the three-year lease, Toyota Financial was thé owner of the vehicle, and received and accepted a negotiated payment for the vehicle. Thus, the compensatory damages arising from the tort had been recovered by the owner. (See Restatement (Second) of Torts §§ 901,927(1979)).
Martinoski, however, was left with a $5,146.08 obligation remaining on her lease agreement with Toyota Financial—the shortfall between the lease amount and the insurance payoff—an amount which she could not afford to pay after purchasing a new Toyota vehicle, and an amount she testified she believed, but had nothing in writing to that effect, that Progressive, Bokori’s insurer, and Nationwide, her insurer, would cover between them. She asked Nationwide to re-open her claim when Toyota Financial Services proceeded to attempt to collect the remaining debt and late fees from her pursuant to the lease agreement. Nationwide subsequently dropped her- coverage.
Martinoski, who appeared in small claims court pro se because she could not afford an attorney, clarified for the court that she was only seeking compensation *448 for property damage. When the trial court asked if she was seeking compensation for medical bills, she replied, “right now it was the property damage.” Tr. p. 6. The trial court summed up her response by noting, “just property damage; all right?’ Id. However, Martinoski testified to the amount remaining on the lease for her totaled vehicle, the late fees assessed by Toyota Financial against her for failure to make payments, and the costs' associated with bringing the small claims action.
On cross-examination by counsel for Progressive, Bokori’s insurer, Martinoski was asked, “You’re not contending that this amount, the $22,676.52 represents the fair market value of your vehicle at the time that it was actually totaled, are you?” Id. at 24. Martinoski replied, “I don’t understand that. I know I leased the vehicle. I’d never leased a vehicle. Whatever it was, that’s what I signed the lease for and I was supposed to return it after three years.” Id. Progressive’s counsel further argued, using Martinoski’s Exhibit 2, “Okay. Okay; but, here again, it’s showing a selling price of $17,530.44 that your vehicle was traded into Toyota, or that Toyota received to pay it off after the accident, correct?” Id. at 24-25. Thus, it is clear that Martinoski was actually seeking to be compensated not just for the salvage value of the car, but also for the amount of her contractual obligation under the lease agreement. It is equally clear that Bokori, through counsel for Progressive, was arguing that Martinoski had been fully compensated for her tort claim against him, that her small claims action emanated from the contractual obligations under her lease agreement with Toyota Financial, and that recovery of further damages from Bokori, the tortfeasor, would therefore result in a windfall to her.
“Generally speaking, damages for total destruction to personal property are measured by the fair market value of the property at the time of loss.” Ridenour v. Furness, 546 N.E.2d 322, 325 (Ind. Ct. App 1989). This is a longstanding precept of tort law. “Fair market value is the price at which property would change hands between a willing buyer and seller where neither is under any compulsion to consummate the sale.” Brown v. Ind. Family & Soc. Servs. Admin., 45 N.E.3d 1233, 1238-39 (Ind. Ct. App. 2015). Undoubtedly, the victim of the total destruction of property by a tortfeasor, can hardly be called a willing seller. Nonetheless, that is the legal standard to be applied. “The burden of proving the value of goods destroyed by another is upon the complainant.” Campins v. Capels, 461 N.E.2d 712, 719 (Ind. Ct. App. 1984) (citing So. Ind. Gas & Elec. Co. v. Ind. Ins. Co., 178 Ind.App. 505, 383 N.E.2d 387 (1978)).
The trial court held that without a proponent for Defendant’s Exhibit 1, there was insufficient evidence of the fail' market value of the leased vehicle. Using the trial court’s rationale, if fair market value was not established, then Martinoski was not entitled to an award of damages. The burden was on Martinoski to establish the value, Campins, 461 N.E.2d at 719. Boko-ri’s burden was to establish that Martino-ski would be excessively compensated by the award of the damages requested. See Dado v. Jeeninga, 743 N.E.2d 291, 295 (Ind. Ct. App. 2001). If there was insufficient evidence of fair market value of the leased vehicle, then the burden never shifted to Bokori to establish excessive compensation.
Under my reading of the evidence, it is clear that Martinoski sought to recover from Bokori the amount she owed Toyota Financial under the lease. Bokori did not cause her to incur that loss. Instead, he only deprived Toyota Financial of the *449 value of the car itself, for which Toyota Financial was compensated.
I find persuasive the rationale set forth in Harris v. Peters, 274 Ill.App.3d 206, 210 Ill.Dec. 812, 653 N.E.2d 1274 (1995). In that case, the lessee of a vehicle was involved in a collision, resulting in the total destruction of the vehicle. Harris, the lessee, received from his insurer a check for the fair market value of the vehicle. He signed over the check to the leasing company, which applied that amount against the balance due under the lease agreement. UB, the leasing company, filed a complaint against Harris for the balance due on the lease. Harris filed an answer and third-party complaint against Peters, the tortfeasor, and his insurer seeking a judgment for damages in the amount of any judgment entered against Harris in the underlying action against him. Put differently, Harris sought the difference between the fair market value of the vehicle and the amount due under the vehicle’s lease agreement. The tortfeasor filed a motion to dismiss the count against him, which was granted, and Harris voluntarily dismissed the count against Peters’ insurer.
On appeal, the issue presented was whether the trial court correctly dismissed Harris’ third-party complaint against Peters after finding that Harris was properly compensated for the property loss he suffered in the accident. The Illinois Court of Appeals followed the language of the Restatement, finding that compensatory damages arising from damages sustained through a tort are measured as the fair market value of the property immediately prior to its destruction. 210 Ill.Dec. 812, 653 N.E.2d at 1275. The trial court’s dismissal was affirmed because to force the tortfeasor to pay off the lease would result in a windfall to Harris, who had the obligation to pay off the lease prior to the accident. Id., 210 Ill.Dec. 812, 653 N.E.2d at 1276. “The negative net is the ‘benefit of the bargain’ Harris negotiated with UB and was in no way under the control of Peters and, consequently, a loss which does not flow directly from the tort committed by Peters and therefore not recoverable.” Id.
This argument was made by Bokori during the small claims court hearing and on appeal. See Appellant’s Br. p. 5 (“Fair market value is not the sum still owed on a vehicle under a lease or a car loan.... Martinoski’s mistaken legal theory was that Bokori owed her the difference between what she owed on the lease and what her insurer had paid for the vehicle when it was totaled (i.e., $17,530.44)”); Tr. pp. 18-19 (“Because it’s not our obligation. ... The standard measure of damages that she’s entitled to recover for total destruction of personal property is the fair market value of the item at the time that it was destroyed. That’s what she received.”). Consequently, this question of law was not waived at trial and is not waived for our review,
Martinoski had a remaining contractual liability on the leased vehicle that was totally destroyed as a consequence of Bo-kori’s tortious actions. Although the result of the financial choices made seems to lead to a harsh result, Martinoski has no legal remedy against Bokori for her contractual liability under the lease agreement. For these reasons, I must respectfully dissent from the majority opinion affirming the trial court’s decision.