CHARLES J. DELINKS *vs.* THE NEW YORK, NEW HAVEN
AND HARTFORD RAILROAD COMPANY ET AL.

Third Judicial District, Bridgeport, October Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, JS.

The plaintiff, a street-railway motorman, in order to slow down at a
station, applied the air-brake. On its failure to work he tried a
hand-brake, but that was rusty and could not be moved. Seeing
a car just ahead and being forced to act quickly, he threw the re-
verse switch and turned on the power suddenly, although a rule
of the company called for its gradual application; a circuit-breaker
blew out, the car failed to respond, and a collision occurred. *Held*
that the plaintiff's conduct in applying the power as he did might
have been a mistake, but that it was not necessarily negligence.

The trial court found that the air-brake failed to work by reason of
defects in or injury to some of its parts, which were wrecked by the
collision. The principal testimony to that effect was that of the
plaintiff himself, but it also appeared that the brake had required
repairs a few days before, and that the car, a closed one, was but
little used at that season. *Held:*—

1. That the finding was not so plainly against the weight of the evi-
dence as to require a reversal of the judgment on the ground that
the court below could not reasonably have arrived at its conclusion.

2. That the record did not disclose negligence on the plaintiff's part in
attempting to stop his car by the means of the hand-brake, which
would have sufficed had the brake been in proper condition, even
though the quickest way to stop the car was by the use of the re-
verse switch.

A street-railway motorman has the right to assume that the cars of the
company have been properly examined by its inspectors employed
for that purpose, and that the appliances thereon are in a suitable
condition for use.

The obligation of a street-railway company to maintain its cars and
appliances in a reasonably safe condition for the use of its em-
ployees, necessarily involves the duty of inspection.

In determining the question of contributory negligence all the condi-
tions must be considered; and when one is placed in peril through
another's fault, his attempt to escape therefrom, even by doing a
dangerous act, is not contributory negligence if the attempt is one
such as a person acting with ordinary prudence might make under
the circumstances.

Delinks *v.* New York, N. H. & H. R. Co.

Violation of a rule of his employer will not preclude a servant from recovery, unless it was the proximate cause of his injury.

Argued October 27th—decided December 19th, 1911.

ACTION to recover damages for personal injuries alleged to have been caused by the defendants' negligence, brought to and tried by the Superior Court in New Haven County, *Curtis, J.;* facts found and judgment rendered for the plaintiff for $4,000, and appeal by the defendants. *No error.*

*Joseph F. Berry*, for the appellants (defendants).

*Nathaniel R. Bronson*, for the appellee (plaintiff).

RORABACK, J.  The record shows that the plaintiff, who lived in Union City, on July 3d, 1910, had been in the employ of the defendants for about one year as a motorman in the vicinity of Waterbury.  His regular run at this time was on the Derby Connection.  The plaintiff, before his employment by the defendants, had operated trolley-cars in the capacity of motorman in Providence.

At about two o'clock in the afternoon upon the date above mentioned, the plaintiff was directed to run a car making an extra trip from the center of Waterbury (Exchange Place) to Lake Quassapaug, and to follow the regular car.  The car which he was given was No. 104, a double truck, eight-wheel, closed car, equipped with Christensen air-brakes, and a hand-brake, and equipped electrically with a G. E. No. 800 controller, with nine notches on the same, so that the power-handle could be shifted from the "off" position to the full power, which involved placing the handle around to the ninth notch.  The car also had an overhead switch, or circuit-breaker, so called, which was located at either end of the car and just above the motorman's head as he

stood in position for running the car. This closed car was not used in the summer except in emergencies, and had been standing outdoors in the weather for some time, and its hand-brakes under the platform had not been inspected and oiled, and were badly rusted and clogged up by rust, sand, and dirt on the day of the accident.

The car was taken by Delinks at West Main Street and proceeded to Exchange Place, at which point he started out behind the regular car for Lake Quassapaug with a few passengers. Upon arriving at Lake Quassapaug he started to follow the regular car back toward Waterbury with no passengers upon his car. From a point about eleven hundred feet west of the Middlebury station to the station there is a drop of about sixty feet. As the plaintiff approached a point six or seven hundred feet west of the station on this down grade, he applied the air-brake for the purpose of decreasing the speed of the car and keeping it under control as he approached the station. He opened the air-brake valve gradually in the usual manner, but the air-brake, for some unknown reason which could not later be discovered, owing to the partial destruction of the apparatus as a result of the collision, as hereinafter set forth, failed to perform its function and to decrease the speed of the car. He turned the air-brake off and on again with the same result. He thereupon directed his attention to the hand-brake, but it was rusty and clogged up, as hereinbefore described, and although exerting his utmost strength he was unable to move the handle so as to apply the brake. At a point where he applied the air-brake the car was running about fifteen miles an hour down grade, and rapidly increasing its speed. When he was about one hundred and fifty or one hundred and seventy-five feet from the station he found he was unable to use the hand-brake and there-

fore threw the reverse switch and turned on the power and the circuit-breaker blew out. He shut off the power, threw the overhead or circuit-breaker on, and again applied the power, but he was unable to stop the car, and thereupon it dashed into the regular car then standing at the station.

When within about one thousand feet of the station the plaintiff looked at the indicator on the air-gauge, which showed the normal pressure of sixty to seventy pounds in the reservoir. Both the automatic air-pump, which pumped the air into the reservoir, and the air-brakes worked the entire trip up to this point, and there was nothing then to indicate to the plaintiff that they were not in good condition. This gauge indicated that there was at that moment between sixty and seventy pounds of air in the reservoir, which was the normal and usual condition when the reservoir was full. Whenever the air pressure gives out sufficiently to prevent its use in stopping the car, this failure will always be shown at once in the air-gauge. The hand-brake had become stiff by reason of failure to oil, and permitting its parts to rust, and dirt and sand to accumulate, and was practically unworkable. If the hand-brake had been in good working condition the plaintiff would have been able by its use to have brought the car to a stop within a distance of two hundred feet and avoided the collision. The defendants had negligently failed to inspect the hand-brakes and correct their unsafe condition. It was not the duty of the motorman to inspect or try the hand-brakes before using them to stop the car, and there was no negligence on his part in not discovering their defective condition, which could not be seen from the platform, but only from beneath. The proximate cause of the injury was the negligence on the part of the defendants in failing to inspect the hand-brakes, and in permitting them to become stiff and

rusty, and unable to be used, and the defendants were negligent in not providing a hand-brake on this car in a condition suitable to be used on this trip in a case of emergency, such as confronted the plaintiff on this occasion.

As the plaintiff proceeded toward Middlebury station from Lake Quassapaug he knew that there was a regular car ahead, and that he was following on an extra car, and he knew that it was his duty to stop at Middlebury station. When he crossed the Southbury Road he blew his whistle for the Middlebury station. He was reasonably familiar with the route, knew the grade at the Middlebury station, and expected to stop at this place. After leaving Waterbury he had no occasion to use the hand-brake at any time until just before the accident as herein stated. Air-brakes of this construction are subject to occasional, though rare, trouble and difficulty, and it is possible for some part of the apparatus and appliance in connection with said air-brake system to suddenly fail, thereby rendering useless the brake as an appliance for decreasing speed. These air-brakes were of an approved type used by almost all the railroads in New England and by other railroads in this country and abroad, and were the most reliable brake known to modern railroad science.

The hand-brake is used as an emergency and auxiliary brake, and its purpose is for use in case of trouble with the air-brake. If the air-brake had been workable at the point of application, the car, traveling at the rate of speed at which it was then proceeding, could have been stopped within a distance of two hundred feet.

In applying the reverse the brakes were not set. The plaintiff shut off the power, threw the reverse switch, applied the power, and, the car not being checked, turned the power on to the ninth notch, and

then the overhead blew out, whereupon he threw on the overhead switch and then applied the power again. The first application of power was gradual, that is, the controller handle being swung from notch to notch, and the full nine notches were given because the car was not checked by less power. There was no negligence on the part of the plaintiff in applying the power nine notches at the time and in the way he did apply it. The car had acquired at that time such a momentum that the reverse failed to hold it as it was put on, and it would not have held the car and avoided the collision, substantially as it occurred, if the power had been first applied to the extent of two notches only and held there.

The defendants have pursued the course of procedure permitted by § 797 of the General Statutes, which in part provides that the appellant may have the entire evidence certified, and that if it shall appear from an examination of the record that the finding of the judge does not properly present the facts and rulings, this court shall correct such facts and rulings.

It is found that just before the collision the air-brakes failed to work by reason of some defect or injury to some of the parts which were wrecked by the collision. The defendants attack this conclusion as unwarranted by the evidence, illogical, and contrary to scientific principles.

It is also claimed that portions of the finding should be corrected so as to read that "the air-brakes were in perfect condition at that time." It is true that the principal evidence relied upon to sustain the plaintiff's contention upon this point is that of the plaintiff, an interested witness. But it is also shown in the testimony that this air-brake was out of repair and needed attention only a few days before the accident. It further appears that this car was a closed one, but little used in the summer time, and it is not shown that it had been

used between the date of its repair and the time of the accident. It appears in the testimony that it is possible that some part of the apparatus and appliances used in connection with the air-brake system may suddenly fail, thereby rendering the brake useless. The defendants insist, with a semblance of plausibility, that by reason of the construction of the air-brake and its operation upon the day in question, it necessarily follows that it was in proper condition when the plaintiff had testified that it failed to work. This theory is weakened by the fact that no satisfactory inspection of the car could be made after the accident. It is not impossible that the brake failed to work as the plaintiff has stated. The question presented is one of fact for the trial court, and there is testimony to support its finding.

It cannot be said that it appears from the record that the finding upon this branch of the case is so plainly against the weight and preponderance of the evidence that it can be held that the Superior Court could not have reasonably arrived at the conclusion complained of.

Nothing appears in the case to justify the defendants' contention that the plaintiff was negligent in attempting to use the hand-brake. It appears that the hand-brake is used as an auxiliary, and that its purpose is for use in case of trouble with the air-brake. The evidence and finding show that when the plaintiff attempted to use the hand-brake after the air-brake refused to work the car was several hundred feet from the point where the accident occurred. If the hand-brake had been in good working condition at the latter point the plaintiff would have been able to stop the car within a distance of two hundred feet and avoided the collision. It is of no importance that the quickest way to stop the car was by the use of the reverse. One of the rules fur-

nished the plaintiff for his guidance instructed him never to use the reverse except when necessary to avoid an accident. There was no apparent emergency until after the plaintiff realized that he was unable to decrease the speed of the car by the use of either one of the brakes.

It has been found that the plaintiff's injuries were caused by the negligence of the defendants in failing to furnish a suitable hand-brake. This defect in the hand-brake was under the platform, and when this car was taken by the plaintiff no opportunity or occasion had been given to know of its condition. The defendant companies had an independent system of inspection for their cars and appliances. This hand-brake was a mechanical apparatus to assist the plaintiff and his fellow motormen in the work in which they were engaged. Delinks was a motorman and it was not his duty to inspect the hand-brake, the defective condition of which the court has found caused his injuries. He had a right to assume that a proper inspection had been made, and that this instrumentality was in a proper condition to perform the work he had been instructed to perform. Under those conditions it was the duty of the defendants to use reasonable care to provide a hand-brake which would be suitable and reasonably safe for the work to which it would be put. This duty was a continuing one and included that of maintenance. The duty of maintenance necessarily involved that of reasonable care and inspection by the defendant companies. *Rincicotti* v. *O'Brien Contracting Co.*, 77 Conn. 617 (60 Atl. 115) and cases cited upon page 620.

The defendants charge that there was error in the finding of the court below, that there was no negligence upon the part of the plaintiff in applying the power to reverse the car to nine notches at the time and in the

manner in which he did. The rule under which it is claimed that the plaintiff should have reversed the car was as follows: "Never reverse a car while it is moving except when necessary to avoid an accident. Never reverse with the brakes set, but shut off power, throw the reverse-switch, release brakes and apply power one or two notches." In determining whether an employee has recklessly exposed himself to peril, or failed to exercise the care for his personal safety that might reasonably be expected, regard must always be had to the exigencies of his position; indeed, to all the circumstances of the particular occasion. *Stedman* v. *O'Neil*, 82 Conn. 199, 206, 72 Atl. 923. When the plaintiff ascertained that he was unable to stop the car with either one of the brakes he was within about one hundred and seventy-five feet of the car on the track in front of him. His car was then running about fifteen miles an hour, on a down grade, and rapidly increasing in speed. It will thus be seen that the plaintiff suddenly found himself in a dangerous position, and in attempting to avoid such danger, with no time for deliberation, he may have adopted means which he might not have taken with more time for consideration. When one is placed by the negligence of another in a situation of peril, his attempt to escape danger, even by doing an act which is also dangerous, and from which injury results, is not contributory negligence, such as will prevent a recovery for an injury, if the attempt was one such as a person acting with ordinary prudence might, under the circumstances, make. *Karr* v. *Parks*, 40 Cal. 188; *Wesley City Coal Co.* v. *Healer*, 84 Ill. 126; *Frink* v. *Potter*, 17 id. 406; *Cody* v. *New York & N. E. R. Co.*, 151 Mass. 462, 468, 24 N. E. 402, 468; *Salter* v. *Utica & Black River R. Co.*, 88 N. Y. 43, 50.

The conduct of the plaintiff in reversing the car might be called a mistake, but it was not carelessness. Fur-

thermore, the record shows that the reversal of the car by Delinks had no real connection with his injuries. It is not enough, as the defendants contend, that the plaintiff in the operation of the car at the time violated a rule as to the manner in which a reverse should be made, but it must also appear that such violation was the proximate cause, to some extent at least, of his injuries. *Smith* v. *Connecticut Ry. & Ltg. Co.*, 80 Conn. 268, 270, 67 Atl. 888; *Case* v. *Clark*, 83 Conn. 183, 192, 76 Atl. 518.

The evidence before us justified the Superior Court in making the finding which is questioned by the motion to correct. This finding recites a large number of facts upon which the judgment was founded. These facts fairly warranted the conclusion reached by the trial court, that the proximate cause of the plaintiff's injuries was the negligence upon the part of the defendants in not furnishing a hand-brake in a condition suitable to be used in a case of emergency.

There is no error.

In this opinion the other judges concurred.