******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# AMICA MUTUAL INSURANCE COMPANY
*v.* DOUGLAS J. GILLERAN ET AL.
(AC 48363)

Cradle, C. J., and Elgo and Westbrook, Js.

*Syllabus*

The plaintiff insurance company appealed from the trial court's partial summary judgment for the defendants, J and the insureds, D and G, in its action seeking a declaratory judgment as to whether it was obligated to defend D under a certain automobile insurance policy in a separate negligence action J brought after a vehicle operated by D collided with the vehicle J was operating. The plaintiff claimed that the court improperly concluded that J's claim for damages in the negligence action for the diminution in value of her repaired automobile potentially fell within the coverage provided by the insurance policy. *Held*:

The trial court properly granted in part the motions for summary judgment filed by J and by D and G, as there was a reasonable basis to conclude that J's diminution in value claim potentially fell within the insurance policy's coverage for destruction of tangible property and, thus, triggered the plaintiff's duty to defend D in the underlying negligence action.

This court rejected the plaintiff's contention that diminution in value to a motor vehicle cannot constitute destruction of tangible property under the insurance policy's provision governing damage to a third party's vehicle, as the policy did not specifically disclaim coverage for diminution in value damages in that provision, as it did elsewhere in the policy, and the term "destruction" in the policy's definition of property damage encompassed partial destruction of tangible property, which obligated the plaintiff to pay damages that may include costs related to the diminution of a vehicle's value.

Argued January 5—officially released May 12, 2026

*Procedural History*

Action for a declaratory judgment determining whether the plaintiff had a duty to defend the named defendant under a certain automobile insurance policy in a separate negligence action, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Gordon, J.*, granted in part the plaintiff's motion for summary judgment and the defendants' motions for summary judgment; judgment in part for the defendants, from which the plaintiff appealed to this court. *Affirmed*.

*Mara E. Finkelstein*, with whom, on the brief, were *Anthony J. Antonellis* and *John A. Donovan III*, for the appellant (plaintiff).

*Matthew J. Forrest*, with whom was *Barbara Curatolo*, for the appellee (defendant Jasmin Harding).

*Opinion*

**ELGO, J.** The plaintiff, Amica Mutual Insurance Company, appeals from the partial summary judgment rendered by the trial court in favor of the defendants, Douglas J. Gilleran, Diane M. Gilleran, and Jasmin Harding, in this declaratory action regarding an insurer's duty to defend.[1] On appeal, the plaintiff claims that the court improperly concluded that the underlying complaint contained an allegation that possibly fell within the scope of the insurance policy at issue. We disagree and, accordingly, affirm the judgment of the trial court.

The record before us reveals the following facts and procedural history. The plaintiff is an insurer licensed to transact business in this state. The defendants are residents of Connecticut. At all relevant times, Douglas and Diane maintained a personal automobile insurance policy with the plaintiff (policy).

On September 23, 2021, Douglas was operating a motor vehicle insured by the plaintiff that collided with a 2020 BMW 430i (vehicle) owned and operated by Jasmin. The collision occurred in Bloomfield and allegedly was caused by Douglas' negligent operation of his vehicle.

Jasmin thereafter commenced a negligence action against Douglas in July 2022 (negligence action). In her one count complaint, Jasmin alleged that she had "suffered a diminution in value to her vehicle and under Connecticut law is entitled to compensation for such." She also alleged a loss of "the right to use her vehicle,"

---

[1] For clarity, we refer to Douglas J. Gilleran, Diane M. Gilleran, and Jasmin Harding individually by first name and collectively as the defendants in this opinion. We also note that Douglas and Diane did not file briefs in this appeal or participate in oral argument.

"lost time to pursue one's interests," a "loss of life's enjoyment," and "inconveniences" as a result of Douglas' negligence.

In August 2022, the plaintiff sent Douglas and Diane a certified letter regarding its representation of Douglas in the negligence action (reservation of rights letter). In that letter, Attorney Anthony J. Antonellis, on behalf of the plaintiff, stated in relevant part: "[The plaintiff] hereby reserves all rights to disclaim coverage with respect to the claim as written in [Jasmin's complaint]. Nevertheless, as a courtesy to you, [the plaintiff] will provide a defense for you . . . subject to any and all policy defenses . . . . [The plaintiff] is proceeding with any investigation and handling of this matter pursuant to a full and complete reservation of any and all rights [the plaintiff] may have under the law or insurance policies." Antonellis also explained that "it is [the plaintiff's] position that there is no insurance coverage available for any alleged 'diminution in value' . . . under Connecticut law and/or the terms and conditions of the [policy]. . . . [The plaintiff] has no obligation to indemnify or reimburse the claimant with respect to this 'diminution in value' claim." In accordance with those representations, the plaintiff retained legal counsel, who filed an appearance on behalf of Douglas in the negligence action.

On September 7, 2022, Douglas filed an answer to Jasmin's complaint, in which he denied the allegations of negligence in all material respects. A certificate of closed pleadings was filed on September 22, 2022. On January 19, 2023, Jasmin filed an offer of compromise, in which she offered to settle the case for $9000. Douglas did not accept that offer.

On May 22, 2023, the plaintiff commenced this declaratory action against the defendants. Its operative complaint contained one count and alleged that the plaintiff had no duty to defend Douglas in the negligence action. The plaintiff alleged in relevant part: "There is no coverage because [diminution in value] damages are not physical injury to, destruction of or loss of use of tangible

property. . . . There is no coverage for claims of loss of life's enjoyment, as they are not physical injury to, destruction of or loss of use of tangible property. . . . [The plaintiff] has no duty to indemnify [Douglas] for any claims of [diminution in value] damages, loss of life's enjoyment, or loss of time arising out of the [negligence] action pursuant to the policy. . . . [The plaintiff] has no duty to defend aris[ing] out of the allegations for [diminution in value] damages and loss of life's enjoyment."

On November 9, 2023, Douglas and Diane filed an answer to the plaintiff's complaint, in which they denied the material allegations contained therein. Jasmin filed a similar answer on January 5, 2024. On January 12, 2024, the plaintiff filed a certificate of closed pleadings.

On March 11, 2024, Jasmin filed a motion for summary judgment in the declaratory action, claiming that no genuine issues of material fact existed and that she was entitled to judgment as a matter of law because both her diminution in value claim and her separate claim for lost time, inconvenience, and loss of life's enjoyment damages potentially fell within the coverage provided by the policy. That motion was accompanied by a memorandum of law and several exhibits.[2]

On May 2, 2024, the plaintiff filed an objection to Jasmin's motion for summary judgment, as well as its own motion for summary judgment. In its motion for summary judgment, the plaintiff argued that the policy in question "does not provide coverage for either diminished value to a vehicle or a third-party claimant's 'inconvenience damages.' "[3] The defendants subsequently filed

---

[2] Those exhibits were (1) a copy of the policy, (2) a copy of the insurance policy at issue in *Lebowitz* v. *Amica Mutual Ins. Co.*, Superior Court, judicial district of New Haven, Docket No. CV-12-6027780-S (August 8, 2013) (56 Conn. L. Rptr. 629), (3) the sworn affidavit of Attorney Matthew J. Forrest, in which he attested to the accuracy of that copy of the insurance policy from *Lebowitz*, (4) a copy of the memorandum of law filed by the plaintiff in *Lebowitz*, and (5) a copy of the complaint filed by Jasmin in the negligence action.

[3] Appended as exhibits to that memorandum were (1) a copy of the complaint filed by Jasmin in the negligence action, (2) a copy of the

separate objections to the plaintiff's motion for summary judgment with corresponding memoranda of law.

On June 14, 2024, Douglas and Diane filed their own motion for summary judgment in the declaratory action, arguing that the plaintiff had a duty to defend Douglas in the negligence action because both the diminution of value damages and the "inconvenience" damages alleged by Jasmin were covered by the policy.[4] The plaintiff filed an objection to that motion on August 14, 2024.

The court held a hearing on the parties' respective motions for summary judgment on October 21, 2024. In its subsequent memorandum of decision, the court concluded that Jasmin's claim for damages related to the diminution in value of her vehicle was potentially recoverable under the policy, which triggered the plaintiff's duty to defend Douglas in the negligence action. The court thus denied the plaintiff's motion for summary judgment and granted the defendants' corresponding motions for summary judgment with respect to the diminution in value claim.[5] From that judgment, the plaintiff now appeals.

As a preliminary matter, we note the well established standard that governs our review of a trial court's

---

reservation of rights letter, (3) a copy of the policy, and (4) a copy of a nine page transcript dated April 27, 2009, from *Amica Mutual Ins. Co.* v. *Ward*, Superior Court, judicial district of New Britain, Docket No. CV-08-4018925-S.

[4] Appended as exhibits to the memorandum of law filed by Douglas and Diane were (1) a copy of the policy, (2) a copy of the Superior Court decision in *Spillane* v. *Kondash*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-18-6026631-S (March 18, 2020), and (3) a copy of the Superior Court decision in *Lebowitz* v. *Amica Mutual Ins. Co.*, Superior Court, judicial district of New Haven, Docket No. CV-12-6027780-S (August 8, 2013) (56 Conn. L. Rptr. 629).

[5] In its memorandum of decision, the trial court also granted the plaintiff's motion for summary judgment with respect to Jasmin's claim for lost time, inconvenience, and loss of life's enjoyment damages under the policy. See *Piecuch* v. *Courtney*, Superior Court, judicial district of New Haven, Docket No. CV-18-6082079-S (May 10, 2019) (68 Conn. L. Rptr. 556, 557) ("[t]he majority view [in Connecticut] holds that inconvenience, annoyance, and certain other consequential damages, including emotional distress, lost time, and loss of life's enjoyment

decision to grant a motion for summary judgment. "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. . . . [T]he moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle[s] him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue." (Internal quotation marks omitted.) *Fiano* v. *Old Saybrook Fire Co. No. 1, Inc.*, 332 Conn. 93, 101, 209 A.3d 629 (2019). Whether the trial court properly rendered summary judgment is a question of law subject to our plenary review. See *Nash Street, LLC* v. *Main Street America Assurance Co.*, 337 Conn. 1, 8, 251 A.3d 600 (2020).

"Our standard of review for interpreting insurance policies is [also] well settled. The construction of an insurance policy presents a question of law that we review de novo. . . . When construing an insurance policy, we look at the [policy] as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result. . . . Insurance policies are interpreted based on the same rules that govern the interpretation of contracts. . . . In accordance with those rules, [t]he determinative

are not recoverable in a motor vehicle diminished value claim"). The propriety of the court's decision to render summary judgment in favor of the plaintiff on that claim is not at issue in this appeal.

question is the intent of the parties . . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. . . . Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured . . . ." (Internal quotation marks omitted.) *Stewart* v. *Old Republic National Title Ins. Co.*, 218 Conn. App. 226, 239–40, 291 A.3d 1051 (2023).

"The duty to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether [the complaint] stated facts which bring the injury within the coverage. . . . If an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured. . . . That being said, an insurer has a duty to defend only if the underlying complaint *reasonably* alleges an injury that is covered by the policy. . . . [W]e will not predicate the duty to defend on a reading of the complaint that is . . . conceivable but tortured and unreasonable. . . . There is also no duty to defend if the complaint alleges a liability which the policy does not cover . . . ." (Emphasis in original; internal quotation marks omitted.) Id., 240.

"To prevail on a motion for summary judgment on a claim for breach of the duty to defend, an insurer must establish that there is no genuine issue of material fact either that no allegation of the underlying complaint falls even possibly within the scope of the insuring agreement or, even if it might, that any claim based on such an

allegation is excluded from coverage under an applicable policy exclusion."[6] (Internal quotation marks omitted.) Id., 241.

On appeal, the plaintiff claims that the court improperly concluded that Jasmin's claim for diminution of value damages in the negligence action possibly fell within the scope of the policy. We do not agree.

"[T]he question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of [the] complaint with the terms of the insurance policy." (Internal quotation marks omitted.) *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, 308 Conn. 146, 154, 61 A.3d 485 (2013); see also *Stewart* v. *Old Republic National Title Ins. Co.*, supra, 218 Conn. App. 255 n.9 ("when determining an insurer's duty to defend, we must look to the allegations within the complaint made *by a third party against the insured*" (emphasis in original)). We begin, therefore, with a review of the relevant allegations contained in the negligence complaint.

In her complaint, Jasmin alleged that her vehicle "sustained collision damage" due to the negligence of Douglas. More specifically, she alleged that her vehicle "was damaged so as to require the expense of a considerable sum to repair it." Jasmin further alleged that she "suffered a diminution in value to her vehicle and under Connecticut law is entitled to compensation for such."

With those allegations in mind, we turn to the relevant provisions of the policy. Part A concerns coverage for damages sustained by a third party in an automobile accident for which an insured is liable. It provides in relevant part: "We will pay for damages for *bodily injury* or *property damage* for which any *insured* becomes legally responsible because of an auto accident. . . . We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. . . . We have no duty to

_____

[6] At no time has the plaintiff claimed that a policy exclusion applies to the coverage issue in this case.

defend any suit or settle any claim for *bodily injury* or *property damage* not covered under this policy." (Emphasis in original.) The policy defines "property damage" as "physical injury to, destruction of or loss of use of tangible property." The policy does not define the term "destruction."

Connecticut courts have long recognized that destruction can be total or partial in nature. See, e.g., *State* v. *Anonymous*, 240 Conn. 708, 711, 694 A.2d 766 (1997) (noting "the total or partial destruction of several school buses"); *Kroop* v. *Kroop*, 186 Conn. 211, 215, 440 A.2d 293 (1982) (house was "partially destroyed by fire"); *Thomas* v. *Roper*, 162 Conn. 343, 347, 294 A.2d 321 (1972) (discussing statute applicable when building "is wholly or partially destroyed by fire, water, or by a mob" (internal quotation marks omitted)); *Delinks* v. *New York, New Haven & Hartford Railroad Co.*, 85 Conn. 102, 104, 81 A. 1036 (1911) (collision caused "partial destruction" of vehicle); *Mata* v. *Commissioner of Motor Vehicles*, Superior Court, judicial district of New Britain, Docket No. CV-21-6069372-S (June 7, 2022) (stone wall "was partially destroyed" by motor vehicle), aff'd, 221 Conn. App. 25, 299 A.3d 1262 (2023). That is not a novel proposition. As the Supreme Court of Mississippi observed almost one century ago, "[t]he wreck of an automobile may mean either a total or partial destruction thereof . . . ." *National Casualty Co.* v. *Mitchell*, 162 Miss. 197, 203, 138 So. 808 (1932); see also *Republic/NFR & C Parking of Louisville* v. *Regional Airport Authority of Louisville & Jefferson County*, 410 F.3d 888, 892 (6th Cir. 2005) ("[d]estruction does not have to be total"); *Ins. Co. of North America* v. *Atlantic National Ins. Co.*, 329 F.2d 769, 779 (4th Cir. 1964) ("the loss involved . . . the partial destruction of the automobile"); *American Service Center Associates* v. *Helton*, 867 A.2d 235, 240 (D.C. App. 2005) (discussing damages in "cases concerning partial destruction to an automobile"); *Mareci* v. *General Motors*, 90 Ill. App. 3d 335, 340, 413 N.E.2d 34 (1980) ("as a result of the collision the automobile was thrown off the road and

partially destroyed"); *Mochel* v. *Iowa State Traveling Men's Assn.*, 203 Iowa 623, 627, 213 N.W. 259 (1927) ("The word 'wreck' means one of two things: Either (1) a total or (2) a partial destruction of the thing wrecked. The damage or destruction is simply a matter of degree."); *Fred Frederick Motors, Inc.* v. *Krause*, 12 Md. App. 62, 64–65, 277 A.2d 464 (1971) (comparing plaintiff's recovery "[i]f the vehicle were partially destroyed" to "[i]f the car were completely destroyed"); *Barber* v. *McAdoo*, 110 A. 119, 119 (N.J. 1919) ("[t]he plaintiff in this case sues to recover compensation for the partial destruction of his automobile which was wrecked in a collision"); *Lusty* v. *Ostlie*, 71 N.W.2d 753, 755 (N.D. 1955) ("[p]laintiff brings this action to recover damages for the partial destruction of his automobile in a collision with a car owned by the defendant"); *Rakich* v. *Anthem Blue Cross & Blue Shield*, 172 Ohio App. 3d 523, 531, 875 N.E.2d 993 (2007) (discussing damages "for partial destruction of a vehicle"); *Mondragon* v. *Austin*, 954 S.W.2d 191, 196 (Tex. App. 1997) (distinguishing "partial destruction" cases from "total destruction cases").

In the present case, it is undisputed that Jasmin's vehicle required repair following the September 23, 2021 collision, as alleged in the negligence complaint. As this court has noted, the term "repair" is defined as "[t]o mend, remedy, restore, renovate. To restore to a sound or good state after decay, injury, dilapidation, or partial destruction. . . . The word repair contemplates an existing structure or thing which has become imperfect, and means to supply in the original existing structure that which is lost or destroyed . . . ." (Internal quotation marks omitted.) *Yale-New Haven Hospital, Inc.* v. *Jacobs*, 64 Conn. App. 15, 19 n.4, 779 A.2d 222, cert. denied, 258 Conn. 916, 782 A.2d 1254 (2001). A vehicle that requires repair following a collision necessarily is one that has been partially destroyed. We therefore conclude that "destruction," as that term is used in the definition of property damage set forth in the policy, encompasses both total and partial destruction of tangible property. Accordingly, part A of the policy obligates the plaintiff

to pay damages for both total and partial destruction of a motor vehicle for which its insured is legally responsible following an automobile accident.

Under Connecticut law, those damages may include costs to repair a motor vehicle and costs related to the diminution of its value. As our Supreme Court explained decades ago, "[o]ur rule is that when the injury is less than a complete loss . . . the measure of damages is the difference in value between the property before and after the loss, with interest from date of loss." (Internal quotation marks omitted.) *Littlejohn* v. *Elionsky*, 130 Conn. 541, 543, 36 A.2d 52 (1944). Such diminution in value damages are appropriate because a vehicle "may be badly damaged and be repaired so as to put it in a sound or good state, and yet be worth much less than before the collision." Id.; see also *Orlando* v. *Liburd*, 353 Conn. 845, 867, 348 A.3d 430 (2026) ("our case law clearly establishes that a plaintiff has a right to recover for . . . diminution in property value, even if his vehicle has been repaired"); *Hammarlund* v. *Troiano*, 146 Conn. 470, 473, 152 A.2d 314 (1959) (concluding that trial court properly awarded plaintiff damages for diminution in value to vehicle "as a result of the collision"); *Damico* v. *Dalton*, 1 Conn. App. 186, 187, 469 A.2d 795 (1984) ("[i]n the present case, there can be no doubt that the measure of damages to the defendant's automobile was the difference between its value immediately prior to the collision and its value immediately thereafter"). When repairs fall short of putting a vehicle "in substantially the same condition as before the collision," leaving the vehicle partially destroyed, diminution in value damages are warranted. *Littlejohn* v. *Elionsky*, supra, 543.

That precept is consonant with the Restatement (Second) of Torts, which provides in relevant part: "When one is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for . . . the difference between the value of the chattel before the harm and the value after the harm or, at his election in an appropriate case, the

reasonable cost of repair or restoration, with due allowance for any difference between the original value and the value after repairs . . . ." 4 Restatement (Second), Torts § 928, p. 543 (1979); see also 1 D. Dobbs, Law of Remedies (2d Ed. 1993) § 5.13 (1), p. 838 ("[i]f the chattel is only damaged, the plaintiff may be permitted to recover the reasonable costs of repairs plus any remaining diminution in value"). It therefore is not surprising that the proposition articulated by our Supreme Court in *Littlejohn* is familiar to other jurisdictions.[7]

The Superior Court of this state repeatedly has held that a plaintiff may recover diminution in value damages

[7] See, e.g., *Farmers Ins. Co. of Arizona* v. *R.B.L. Investment Co.*, 138 Ariz. 562, 564, 675 P.2d 1381 (App. 1983) ("[j]urisdictions that have addressed the issue . . . have generally held that the measure of compensation to the owner of a negligently damaged motor vehicle may include the cost of repair and proven residual diminution in fair market value"); *MFA Ins. Co.* v. *Citizens National Bank of Hope*, 260 Ark. 849, 851, 545 S.W.2d 70 (1977) ("[w]here the repairs by the insurer under a collision policy did not substantially restore the automobile to its former condition and value, the proper measure of damages was the difference in the value before it was wrecked and the value after it was wrecked, repaired, and tendered to the insured" (internal quotation marks omitted)); *American Service Center Associates* v. *Helton*, supra, 867 A.2d 243 ("[w]e . . . hold that when a plaintiff can prove that the value of an injured chattel after repair is less than the chattel's worth before the injury, recovery may be had for both the reasonable cost of repair and the residual diminution in value after repair"); *Halferty* v. *Hawkeye Dodge, Inc.*, 158 N.W.2d 750, 754 (Iowa 1968) ("if the value of the repaired or restored property is less than the value of the property before the injury, such difference in value is also allowed, in addition to the reasonable cost of repair or restoration" (internal quotation marks omitted)); *Broadie* v. *Randall*, 114 Kan. 92, 94, 216 P. 1103 (1923) ("where the repair of an injury did not restore the property to its original condition and value, but was a reasonable effort to make it as nearly usable as practicable, and as repaired was not as valuable as it was before the injury, the cost of the repair together with the difference in value of the repaired property and its value before injury [can] be a fair measure of the loss sustained"); *Smith* v. *Government Employees Ins. Co.*, 349 So. 2d 435, 437 (La. App. 1977) ("if the vehicle is not totally destroyed the measure of damages is the cost of repair plus diminution in value resulting from the accident"), aff'd, 358 So. 2d 1289 (La. 1978); *Fred Frederick Motors, Inc.* v. *Krause*, supra, 12 Md. App. 64 ("[A] recovery of the full market value is allowed if the vehicle is completely destroyed. Although the measure is different,

following repairs to a vehicle involved in an accident. See, e.g., *Spillane* v. *Kondash*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-18-6026631-S (March 18, 2020) ("[i]t is well settled in Connecticut that an individual can bring an action for the diminished value of his or her vehicle after an accident"); *Rigakos* v. *O'Neill*, Superior Court, judicial district of Stamford-Norwalk,

the position to which the injured party should be restored is the same, i.e., complete compensation for the injury. If the vehicle is completely destroyed, the plaintiff receives the market value. To be consistent, the plaintiff should be put in the same position when his injured vehicle is repairable; he should have a vehicle of the same market value. If the repaired vehicle does not have the same market value, the plaintiff should receive additional damages. To do otherwise would put the plaintiff in a different position depending on whether the vehicle was partially or completely destroyed."); *Franklin Corp.* v. *Prahler*, 91 App. Div. 3d 49, 56, 932 N.Y.S.2d 610 (2011) ("[t]he weight of authority supports our conclusion that [the] plaintiff is entitled to a charge that it may recover the diminution in value of the vehicle" following automobile accident); *Brennen* v. *Aston*, 84 P.3d 99, 102 (Okla. 2003) (noting that "almost all jurisdictions which have examined the issue allow recovery for the cost of repairs made plus the diminution in value of the personal property upon a proper showing" and concluding that "the overwhelming weight of legal authority supports the rule that damages are not limited to the cost of repairs actually made where it is shown that repairs failed to bring the property up to the condition it was in prior to the damage"); *Newman* v. *Brown*, 228 S.C. 472, 477, 90 S.E.2d 649 (1955) ("[t]he damages are not limited to the cost of repairs actually made . . . where it is shown that they did not . . . put the property in as good [a] condition as it was before the injury" (internal quotation marks omitted)); *Senter* v. *Tennessee Farmers Mutual Ins. Co.*, 702 S.W.2d 175, 178 (Tenn. App. 1985) (if repairs made to vehicle "restore function and appearance but not fair market value," insured is entitled to recover difference between its fair market value immediately before accident and immediately after "all repairs [have] been completed"), appeal denied, Tennessee Supreme Court (December 30, 1985); *Averett* v. *Shircliff*, 218 Va. 202, 207, 237 S.E.2d 92 (1977) ("[m]ost jurisdictions . . . have held that where an automobile has been damaged but not totally destroyed and it is reasonably susceptible of repairs, the measure of damages is the cost of repairs and any diminution of the automobile's market value which results from the car having been injured after the repairs; that is, the cost of repairs plus any amount of depreciation in value of the vehicle as repaired"); *Ellis* v. *King*, 184 W. Va. 227, 230, 400 S.E.2d 235 (1990) ("[i]f, after repair, the damaged vehicle cannot be returned to its condition prior to the accident, we believe that damages for diminution in value are recoverable").

Docket No. CV-16-6027436-S (September 11, 2017) (awarding plaintiff damages "for diminution in value of [her] vehicle as a result of the repairs"); *Muckle* v. *Pressley*, Superior Court, judicial district of Middlesex, Docket No. CV-15-6013126-S (March 30, 2017) (64 Conn. L. Rptr. 188, 188) (court concluded that "the plaintiff is entitled to damages for the diminished value of his vehicle, after its repair"), aff'd, 185 Conn. App. 488, 197 A.3d 437 (2018); *Bartnik* v. *Stehr*, Superior Court, judicial district of New Britain, Docket No. CV-13-6019999 (September 2, 2014) (58 Conn. L. Rptr. 884, 885) ("[r]ecovery for diminished value [following repairs to a vehicle] long [has] been permitted under Connecticut law"). That precedent provides further support for the trial court's conclusion that Jasmin's claim for diminution in value damages possibly fell within the scope of the policy.

In addition, we note that an endorsement[8] to another part of the policy contains a definition of the term "diminution in value," which states: " 'Diminution in value' means the actual or perceived loss in market or resale value which results from a direct and accidental loss." (Emphasis omitted.) The policy nevertheless does not specifically disclaim coverage for diminution in value damages in part A, as it does in other sections. For example, part D concerns coverage for damage to an insured's vehicle and provides in relevant part that the plaintiff "will pay for direct and accidental loss to *your covered auto* or any *non-owned auto*, including their equipment, minus

---

[8] An endorsement "is a writing added or attached to a policy or certificate of insurance which expands or restricts its benefits or excludes certain conditions from coverage. . . . When properly incorporated into the policy, the policy and the . . . endorsement together constitute the contract of insurance, and are to be read together to determine the contract actually intended by the parties." (Citation omitted; internal quotation marks omitted.) *National Grange Mutual Ins. Co.* v. *Santaniello*, 290 Conn. 81, 93, 961 A.2d 387 (2009); see also *Schultz* v. *Hartford Fire Ins. Co.*, 213 Conn. 696, 705, 569 A.2d 1131 (1990) ("[i]n construing an endorsement to an insurance policy, the endorsement and policy must be read together, and the policy remains in full force and effect except as altered by the words of the endorsement" (internal quotation marks omitted)).

any applicable deductible . . . ." **(Emphasis in original.)** Part D of the policy then explicitly excludes diminution in value damages from the coverage provided to an insured.[9] If the plaintiff intended to exclude diminution in value damages from the coverage provided to an insured in part A of the policy, it could have included such an exclusion, as it did in part D.[10] See, e.g., *P.I. & I. Motor Express, Inc.* v. *RLI Ins. Co.*, 40 F.4th 398, 408 (6th Cir. 2022) **(**"a different part of the policy shows that [the insurer] knows how to exclude" coverage for particular liability**);** *Silverball Amusement, Inc.* v. *Utah Home Fire Ins. Co.*, 842 F. Supp. 1151, 1159 (W.D. Ark.) ("[i]f there is an exclusion in one section but not in another, the court cannot rewrite the contract to place exclusions in both sections, especially when the insurance company could have easily done so when it drafted the policy"**),** aff'd, 33 F.3d 1476 (8th Cir. 1994); *FLM, LLC* v. *Cincinnati Ins. Co.*, 24 N.E.3d 444, 457 (Ind. App. 2014) ("[w]hen an insurer knows how to add limiting language but fails to do so, it is reasonable to adopt a construction in favor of coverage"**);** *Hanneman* v. *Continental Western Ins. Co.*, 575 N.W.2d 445, 450 (N.D. 1998) **(**"a limitation in one section of an insurance policy and the absence of similar limiting language in another section shows the insurer intended to limit in one section but not in another"**).** The plaintiff's decision to include a diminution in value exclusion in part D, but not part A, of the policy

---

[9] The pertinent exclusion to part D of the policy provides: "We will not pay for: Loss to *your covered auto* or any *non-owned auto* due to *diminution in value*." (Emphasis in original.)

[10] As the trial court noted in its memorandum of decision, an exclusion disclaiming liability for diminution in value damages "may not pass muster" under § 38a-334-5 (a) of the Regulations of Connecticut State Agencies, which obligates insurers in this state "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage caused by accident and arising out of the ownership, maintenance or use of a motor vehicle owned or long-term leased by the named insured." See *Safeco Ins. Cos.* v. *Vetre*, 174 Conn. 329, 333, 387 A.2d 539 (1978) ("any provisions of a private contract of insurance which conflict with the statutes or regulations must give way to the latter"). Whether such diminution in value exclusions run afoul of that requirement is an issue we need not resolve in this case.

provides additional support for the court's conclusion that Jasmin's diminution in value claim potentially fell within the scope of the policy.

In its principal appellate brief, the plaintiff posits that diminished value "cannot be considered" destruction of tangible property. The plaintiff has not provided any legal authority or analysis to support that bald assertion. As previously noted, although the policy defines "property damage" as "physical injury to, destruction of or loss of use of tangible property," it does not define the term "destruction." It therefore is appropriate to turn to definitions found in dictionaries to determine "the common, natural, and ordinary meaning of an undefined term" in the policy. *New London County Mutual Ins. Co.* v. *Zachem*, 145 Conn. App. 160, 166, 74 A.3d 525 (2013). Destruction is defined in part as "[h]arm that substantially detracts from the value of property, esp. personal property." Black's Law Dictionary (9th Ed. 2009) p. 513; see also *United States* v. *Yazzie*, Docket No. CR-10-2460 JB, 2011 WL 5223035, *5 (D.N.M. October 17, 2011) (noting that "[t]he New Oxford American Dictionary defines 'destruction' as 'the action or process of causing so much damage to something that it . . . cannot be repaired'"). When a court awards diminution in value damages following the repair of a vehicle, it does so because the vehicle is not "in substantially the same condition as before the collision." *Littlejohn* v. *Elionsky*, supra, 130 Conn. 543; see footnote 7 of this opinion. In cases where, "after repair, the damaged vehicle cannot be returned to its condition prior to the accident"; *Ellis* v. *King*, 184 W. Va. 227, 230, 400 S.E.2d 235 (1990); the vehicle necessarily has sustained partial destruction in some respect. See, e.g., *Bowman Steel Corp.* v. *Lumbermens Mutual Casualty Co.*, 364 F.2d 246, 250 n.8 (3d Cir. 1966) ("diminution in market value is evidence of damage"); *Rossier* v. *Union Automobile Ins. Co.*, 134 Or. 211, 215–16, 291 P. 498 (1930) ("[i]t cannot be said that there has been a complete restoration of the property unless it can be said that there has been no diminution of value after repair of the car"). We therefore reject the

plaintiff's contention that diminution in value to a motor vehicle cannot constitute destruction of tangible property, as that terminology is used in part A of the policy.

As our Supreme Court has explained, "[a]n insurer's duty to defend is triggered if at least one allegation of the complaint falls even *possibly* within the coverage." (Emphasis in original; internal quotation marks omitted.) *Capstone Building Corp.* v. *American Motorists Ins. Co.*, 308 Conn. 760, 805, 67 A.3d 961 (2013). Accordingly, we need not definitively decide whether the policy provides coverage to Jasmin's diminution in value claim. Rather, our task is to determine whether there is a reasonable basis to conclude that Jasmin's diminution in value claim possibly falls within the coverage provided by the policy. We conclude that such a basis exists in this case, which triggered the plaintiff's duty to defend Douglas in the negligence action. The court, therefore, properly granted in part the defendants' motions for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.